THE PEOPLE, RESPONDENTS, *v.* MICHAEL GOLDMAN, APPELLANT.

KEEPING GAMING-HOUSE—GAMING.—The common law in relation to the offense of keeping gaming-houses, is superseded by the statute of the sixth session, entitled "An act relating to all games of chance."

INTERPRETATION OF STATUTES.—The maxim that *expressio unius est exclusio alterius* is to be applied to the interpretation of statutes, as well as to contracts.

APPEAL from the third judicial district, Oneida county.

*Huston & Gray*, for the appellant.

*F. E. Ensign, district attorney*, for the respondents.

PRICKETT, J., delivered the opinion; CLARK, J., concurring; HOLLISTER, C. J., dissenting.

At the July term, 1875, of the district court in and for the county of Oneida, the defendant, Michael Goldman, was indicted under the common law for keeping and maintaining a common gaming-house. The indictment charges that on the first day of December, 1874, and at divers other days and times between that day and the finding of the indictment, the defendant, for lucre and gain, unlawfully and willfully did cause and procure divers idle and evil-disposed persons to frequent and come to play together at certain unlawful games of cards, called freeze-out, draw poker, sancho pedro, and divers other unlawful games of chance, etc. The defendant demurred to the indictment, on the ground that the facts therein contained do not constitute a public offense, which demurrer was overruled by the district court, after which a trial was had, resulting in a verdict and judgment of conviction, and fine, from which judgment the appeal is taken to this court. The case comes to this court upon the judgment-roll alone, and the only ques-

tion for determination is whether the facts stated constitute a public offense.

At common law the keeping of a common gaming-house is a public nuisance, and as such indictable; but it is claimed by the defendant that the common law, relating to that subject, was superseded by the act of the legislative assembly entitled, "An act relating to all games of chance," approved January 13, 1871, which was in force at the date of the alleged commission of the offense.

The act referred to, in its first section, provides, that a license shall be granted to any person or persons on the payment of fifty dollars per quarter for each of the following games kept, viz.: Faro, monte, E. O. or roulette, shuffle-board, or any other banking games at cards, dice, or other device; provided, that no person shall have a license for three-card or French monte, or the game called the thimble game, and those games are made unlawful. The body of the act is silent as to other games than those above named. Section 2 of the act provides for the prosecution and punishment of persons who shall keep any of said games without having first obtained a license therefor. The interpretation and effect given to this statute will be decisive of the case. It is a statute concerning the keeping of games. It is the keeping of games that is punishable as a nuisance at common law. So far as the statute relates to or regulates the keeping of the games therein named, there can be no question but that the common law is superseded; the only question is whether, by implication, the common law is abrogated as to the keeping of the games named in this indictment— whether it was the intention of the legislature to revise the whole subject-matter of keeping gaming-houses.

In construing statutes the cardinal rule is to ascertain the intention of the legislature that framed it. "A thing which is within the intention of the makers of the statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers." Again it is said: "A statute is to be construed so as to give sense and meaning to every part, and the maxim was never

more applicable than when applied to the construction of a statute, that *expressio unius est exclusio alterius.*" Applying these well-recognized rules to the statute under consideration, we conclude that when the legislature provided that certain games might be kept on being licensed, and that certain others should be unlawful, they intended that the keeping of all games not named in the act should be legalized. It would not be reasonable to attribute any other intention. If we were in doubt as to the interpretation to be given to this act, on account of any ambiguity, we might resort to the title of the act, which is, " An act relating to all games of chance," but we do not consider this necessary.

This statute having, as we hold, superseded the common law, there was no law in force, at the date mentioned in the indictment which constituted the acts, charged to have been committed by the defendants, a public offense, and it is clear, that there can be no legal conviction for an offense unless the act be contrary to law at the time it is committed.

The judgment of the district court is reversed.