THE NATATORIUM PRESERVATION COMMITTEE, a non-profit association, et al., Plaintiffs-Appellants, *v.* LEONARD EDELSTEIN, individually and as District Engineer, Honolulu District, U.S. Army Corps of Engineers, Defendant, E. ALVEY WRIGHT, individually and as Director, Department of Transportation, State of Hawaii, et al., Defendants-Appellees.

NO. 5550

OCTOBER 31, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

The plaintiffs-appellants in this case are various individuals and groups[1] who seek to preserve from demolition the Waikiki War Memorial Natatorium. Defendants-appellees are specified state officials and a construction company under contract with the U.S. Army

---

[1]This action was brought in the names of individuals as well as unincorporated groups or associations as plaintiffs, and it is unnecessary to decide whether an unincorporated association has standing to bring an action in our courts. However, here we are not in any way intimating whether an unincorporated association may or may not sue or may or may not be sued in our courts.

Corps of Engineers, all of which defendants-appellees, together with the Corps of Engineers, are engaged in an overall restoration project for Waikiki Beach, involving, *inter alia*, the demolition of the Natatorium.

Plaintiffs filed a complaint in circuit court, seeking injunctive relief against defendants. Pursuant thereto, plaintiffs sought a temporary restraining order forbidding defendants, and all those acting in concert with them or under their direction, from taking any action threatening the existence of the Natatorium. Following presentation of exhibits, oral argument, and submission of memoranda of law, the trial court entered an order denying plaintiffs' request for a temporary restraining order.

Plaintiffs appealed the circuit court decision to this court and moved for an injunction pending appeal. Pursuant to that motion, we granted a temporary restraining order, and additionally ordered defendants-appellees to show cause why a preliminary injunction against demolition of the Natatorium should not be issued. Defendants-appellees filed a motion in opposition to plaintiffs-appellants' motion for injunction, and also moved for dismissal of the appeal. The above motions and order to show cause were consolidated and argued before us. Following oral argument, we issued an order continuing in effect the temporary restraining order as a preliminary injunction until further notice by this court. No bond was required of plaintiffs-appellants.

The issue presented by this appeal is a narrow one. Plaintiffs-appellants contend that any demolition of the Natatorium by defendants and those acting in concert with them or under their order would be an illegal act for failure to comply with the provisions of HRS § 171-11. Defendants-appellees argue that the actions taken by them amount to substantial compliance with the requirements of that statute. We are compelled then, within the context of the agreed facts here relevant, to determine how HRS § 171-11 shall be applied.

On June 14, 1951, territorial governor Oren E. Long, by Executive Order No. 1446, *"set aside* . . . as a site for the Memorial Park and *Natatorium"* (emphasis supplied) all the

public land described within the said executive order, and including, *inter alia*, all the real property and real property interest involved in this appeal. The aforesaid land was set aside to the Board of Public Parks and Recreation of the City and County of Honolulu.

Paragraphs one, four, and five of HRS § 171-11 provide as follows:

§ 171-11 Public purposes, lands set aside by the governor; management. The governor may, with the prior approval of the board of land and natural resources, set aside public lands to any department or agency of the State, the city and county, county, or other political subdivisions of the State for public use or purpose. *All withdrawals of the lands or portions thereof so set aside shall be made by the governor.*

. . . .

*Whenever lands set aside for a public purpose* to the various departments and agencies of the State, or to any city and county, county, or other political subdivisions of the State, or to the United States, *are not being utilized for the public purpose stated, the order setting aside the lands shall be withdrawn* and the lands shall be returned to the department.

*The power granted to the governor in this section to* set aside or *withdraw public lands shall be exercised subject to disapproval by the legislature* by two-thirds vote of either the senate or the house of representatives or by majority vote of both, in any regular or special session next following the date of the setting aside or withdrawal. (Emphasis added.)

It is undisputed that no formal withdrawal of the lands set aside in E.O. No. 1446 was made by the governor, and, therefore, there has been no opportunity for the legislature to express its disapproval pursuant to the statutory provisions. Because of the egregious failure of defendants-appellees to follow the clearly designated procedures set out in the duly enacted statutes of this state, it would appear that the imminent demolition of the Natatorium would be an illegal

act.

Defendants-appellees' exhibits introduced below include the following pertinent correspondence:

a) a letter to the acting mayor, dated June 9, 1965, from the clerk of the Department of Parks and Recreation of the City and County, tentatively and conditionally approving "conversion" of the Natatorium "to a general beach facility";

b) two letters from the governor, dated April 11 and July 30, 1973, indirectly consenting to the structure's demolition;

c) a letter dated May 9, 1973, from the mayor of the City and County of Honolulu expressing agreement with destruction of the Natatorium;

d) an affidavit dated July 16, 1973, subscribed and sworn to by the Chairman of the Board of Land and Natural Resources indicating concurrence with a recommendation made to demolish the Natatorium;

e) a letter from the program administrator of the Board of Land and Natural Resources, dated July 13, 1973, recommending grant of an immediate right of entry to the Corps of Engineers in order to proceed to tear down the Natatorium; and finally,

f) from the Department of Recreation of the City and County of Honolulu, three communications dated in 1973, which are arguably construable as implying consent to proposals to demolish the Natatorium.

These documents are relied upon by defendants-appellees in making two arguments of statutory construction.

(1) Defendants-appellees first contend that, notwithstanding non-compliance with paragraphs four and five of HRS § 171-11, the above correspondence is sufficient authorization for destruction of the Natatorium, because these exhibits indicate actions within the provisions of paragraph two of HRS § 171-11, which provides in pertinent part that set aside lands, such as the parcel here relevant,

. . . *shall be managed by the* department, agency, *city and county,* county or other political subdivisions of the State *having jurisdiction thereof,* unless otherwise provided by

law. *Such* department, *agency of* the State, *the city and county*, county or other political subdivisions of the State *in managing such lands shall be authorized to exercise all of the powers vested in the board* in regard to the issuance of leases, easements, licenses, revocable permits, concessions, or rights of entry *covering such lands for such use as may be consistent with the purposes for which the lands were set aside* on the same terms, conditions, and restrictions applicable to the disposition of public lands, all such dispositions being subject to the prior approval of the board; . . . ." (Emphasis added.)

Defendants-appellees argue that a "memorial park purpose" will be preserved even though the Natatorium be removed, and therefore, demolition of the Natatorium can be "consistent with the purposes for which the lands were set aside," and thus within the statutory management prerogatives.

A reference to E.O. No. 1446 indicates that this contention is without merit. The executive order sets aside lands "for the Memorial Park *and Natatorium*." (Emphasis added.) When the essential focus of the set aside land is to be obliterated, it would be frivolous to argue that the set aside land is being used or managed in accord with either the spirit or explicit language of the executive order. We hold that defendants-appellees' actions are not within the purview of paragraph two of HRS § 171-11.

(2) Defendants-appellees also contend that notwithstanding the non-compliance with paragraphs four and five of HRS § 171-11, there is no illegality in the ordered demolition of the Natatorium, because of substantial compliance with the sixth and final paragraph of HRS § 171-11, which provides as follows:

*The board* [of land and natural resources] *shall have the power to dispose of any and all real property interest in lands set aside to any* department or *agency of the* State, *city and county*, county, or other political subdivisions of the State *where the disposition is for a use which is consistent or inconsistent with the purpose for which the land was set aside*. (Emphasis added.)

60

Defendants-appellees contend that the haphazard procedures, indicated by the written correspondence introduced as their exhibits, come within the ambit of, and satisfy the requirements of, this paragraph. We cannot agree. While the meaning of the crucial term "disposition" is not free from ambiguity, and though the legislative history of the provision is not illuminating, we believe that the acceptance of defendants-appellees' construction of the term "disposition" would result in inconsistent and contradictory statutory provisions. Although the planned demolition of the Natatorium is arguably a "disposition" as that term might be construed under the "usual meaning rule," HRS § 1-14, the "usual meaning rule" should not be applied in cases where such an application results in an absurdity. HRS § 1-15(3); *In Re Chung's Appeal*, 44 Haw. 220, 227, 352 P.2d 846, 850-51 (1969). This is such a case.

The first significant absurdity and inconsistency in defendants-appellees' suggested statutory construction is that such construction grants far greater powers to the Board of Land and Natural Resources than are granted to the governor, in that the Board is able to act both informally and without being subject to disapproval by the legislature, while the governor may not do so. Such result cannot be supported in reason or logic, for it delegates to subordinates within the executive branch, who are non-popularly elected administrators only, far greater prerogatives, subject to far less review, than are granted to the governor himself. As an obvious corollary, such construction could permit the Board successfully to defy either or both the governor and legislature.

The second important inconsistency in defendants-appellees' suggested statutory construction is that it could render nugatory the *mandatory* provisions and language of paragraphs four and five of HRS § 171-11. Although the sixth paragraph of HRS § 171-11, enacted by L. 1963, c. 173, § 1, became law subsequent to enactment of provisions substantially similar to paragraphs four and five of HRS § 171-11 by L. 1962, c. 32, pt. of § 2, the latter provisions were substantially reenacted in L. 1963, c. 173, § 1, and L.

1965, c. 239, § 8, any and all variation being only in provisions as to the form in which legislative approval or disapproval might be expressed. Thus, not only have paragraphs four and five never been explicitly repealed, they have actually been reenacted twice, simultaneously with paragraph six. The rule of this court as to implied repeals was stated in *Costa Minors, Etc. v. Flintkote, Co.*, 42 Haw. 518, 529 (1958), and was recently reaffirmed in *State v. Gustafson*, 54 Haw. 519, 521, 511 P.2d 161, 162 (1973). Repeals by implication are not favored, and if effect can reasonably be given to both an earlier and later statute, it is proper to assume that the earlier statute continues to remain in force. Construing the provisions *in pari materia*, we hold that paragraph six of HRS § 171-11 represents an answer to the purely administrative question as to which governmental agency has power to dispose of public lands, but that such power of disposition, as to formally set aside lands, can be exercised only after formal withdrawal by the governor, and after actual or implied approval of such withdrawal by the legislature. This interpretation not only preserves as meaningful all parts of HRS § 171-11, but also is consistent with HRS § 171-13, which defines the disposition powers of the Board as broad, but subject to exceptions "provided by law and subject to other provisions of this chapter [ch. 171]."

The decision of the trial court is reversed. A permanent injunction will be issued enjoining and restraining defendants-appellees and each of them, and all such other persons as are in active concert or participation with them, from in any way tearing down or demolishing the Natatorium.

*Fred W. Rohlfing* and *Robert G. Dodge* for plaintiffs-appellants.

*Melvin Y. Nishimoto*, Deputy Attorney General (*George Pai*, Attorney General, with him on the brief), for defendants-appellees.

DISSENTING OPINION OF KOBAYASHI, J.,
WITH WHOM MARUMOTO, J., JOINS

I dissent.

The majority of the court, in its opinion, states:

[W]e hold that paragraph six of HRS § 171-11 represents an answer to the *purely administrative* question as to which governmental agency has power to dispose of public lands, but that such power of disposition, as to formally set aside lands, can be exercised *only after formal withdrawal* by the governor, and after actual or implied approval of such withdrawal by the legislature. (Emphasis added.)

I am of the opinion that the majority of the court has, by its opinion, judicially legislated and totally nullified an express provision in the statute which permits the Board ". . . to dispose of any and all real property interest in lands set aside . . . where the disposition is for a use *which is* consistent or *inconsistent with the purpose for which the land was set aside* . . . ." (Emphasis added.)

In my opinion the power of the Board as provided in said paragraph six of HRS § 171-11 is an alternative method (aside from the governor's power subject to legislative disapproval) to deal with lands set aside.

The legislature clearly gave the Board the further power, subject to certain prior approvals, to dispose of land set aside for a use inconsistent with the purpose for which the land was set aside.

Standing Committee Report 200 on Senate Bill No. 436 states, *inter alia,* on page 744 of Senate Journal 1963:

The purpose of this bill is to amend Subsection 11, Section 2 of Act 32, Session Laws of Hawaii 1962, to clarify the management function of the various departments, agencies or other political subdivisions of the state having jurisdiction over certain lands. *This bill also gives the Board* of Land and Natural Resources the *further power* to *dispose of any and all real property interest in lands* set aside to any department,

agency of the state, city and county, county or other political subdivisions of the state where the disposition is for a use *which is* consistent or *inconsistent with the purpose for which the land was set aside; subject,* however, to *prior written approval of* the department, agency, city and county, county or other political subdivision of the state and the governor. (Emphasis added.)

The record herein shows that the Board has properly exercised its power to demolish the natatorium with the prior written approval of the necessary parties, including the governor.

I would affirm.