661 P.2d 1214

Donald G. GUMPRECHT and Alice Gumprecht, husband and wife; Dohn R. Johnson and Elizabeth Johnson, husband and wife; and the Harold V. Wilson and Clemma Wilson Trust by George Kristin, Trustee, Petitioners,

v.

CITY OF COEUR D'ALENE, a municipal corporation; Don Johnston, Mayor of the City of Coeur d'Alene; Ford Dunton, Roy Koep, James Fromm, Loren R. Edinger, Lois Land-Albrecht, and Edwin Hume Jones, Members of the City Council of the City of Coeur d'Alene, Respondents.

No. 14238.

Supreme Court of Idaho.

April 6, 1983.

Eugene L. Miller, Coeur d'Alene, for petitioners.

William D. McFarland, Scott W. Reed, Coeur d'Alene, for respondents.

BAKES, Justice.

This is an original proceeding in which petitioners, owners of real property located along the shoreline of Lake Coeur d'Alene and within Coeur d'Alene city limits, sought to restrain an initiative election. The initiative election concerns a proposed amendment to the Coeur d'Alene Municipal Code which would by ordinance prohibit the erection, within the city limits, of new buildings within 150 feet of the shoreline which are in excess of 50 feet in height in the downtown business area, and in excess of 20 feet in height outside the downtown business area. The proposed ordinance would also prohibit the issuance of a building permit for any construction within 40 feet of the shoreline outside the downtown business area but within Coeur d'Alene city limits.

The petitioners filed a Petition For Writ of Prohibition and supporting brief in this Court in which they sought the following relief: (1) an order issuing an alternative writ commanding the respondents to desist and refrain from holding a scheduled initiative election; (2) an order to respondents to show cause why the election should not be permanently enjoined; and (3) an order making the alternative writ of prohibition absolute and permanent.

This Court granted the alternative writ restraining the initiative election and directing respondents, the city of Coeur d'Alene, the mayor and city council members, to show cause why it should not be made permanent. In its answer, the city alleged that a Coeur d'Alene municipal ordinance provides for direct legislation through initiative, that the initiative election procedures were complied with in this instance, and that in Idaho zoning ordinances may properly be adopted by means of initiative elections. The city filed a brief in support of its answer, the petitioners replied, and this Court heard oral argument.

The narrow and important issue of first impression with which we are presented is whether local zoning ordinances may be enacted or amended in Idaho through an initiative election.[1] For the reasons discussed below, we hold that the utilization of an initiative process for zoning matters is inconsistent with the comprehensive statutory procedures mandated by the Local Planning Act of 1975 to be followed in enacting and amending local zoning ordinances and is therefore invalid.

I

■ Preliminarily, we address the procedural posture of this case. Respondents argue that it is premature for us to consider the validity of the proposed initiative and that this Court should decline to hear the petition for a writ of prohibition, allowing

---

1. We do not address or decide the validity of the proposed amendments to the municipal code, an issue discussed in the briefs of both parties. Nor do we address the question of whether the initiative process defeats due process protections afforded to property owners, see *City of East Lake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), and *Cooper v. Bd. of County Comm'rs,* 101 Idaho 407, 614 P.2d 947 (1980), nor the issue of inverse condemnation that might arise if property owners were deprived, by local ordinance, of the use of their land.

the election to be held. This Court's decision in *Perrault v. Robinson,* 29 Idaho 267, 158 P. 1074 (1916), is controlling. In *Perrault,* we granted a Writ of Prohibition preventing a referendum election, stating:

"The question here is not, as in most of the cases cited, may an election which is provided for by law be restrained, but is, have the mayor and council of Boise jurisdiction to call an election which is unauthorized by law and thereby involve the taxpayers of that city in a useless expense . . .?" 29 Idaho at 272, 158 P. at 1075.

The question presented in this case, whether the election itself is proper, is similar to the question presented in *Perrault.* If an initiative election is an improper means of adopting or amending zoning ordinances in Idaho, then the city council of Coeur d'Alene would be acting in excess of its jurisdiction in holding the election. We hold that review of a petition for writ of prohibition is proper where, as in this case, the resolution of an important undecided question of law will necessarily decide the propriety of the election.

## II

■ The power of counties and municipalities to zone is a police power authorized by Art. 12, § 2, of the Idaho Constitution. *See Dawson Enterprises, Inc. v. Blaine County,* 98 Idaho 506, 511, 567 P.2d 1257, 1262 (1977); *Cole-Collister Fire Protection Dist. v. City of Boise,* 93 Idaho 558, 562, 468 P.2d 290, 294 (1970). Art. 12, § 2, of the Idaho Constitution provides:

"LOCAL POLICE REGULATIONS AUTHORIZED.—Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws."

An express limitation on localities' exercise of their police powers is contained in the foregoing constitutional authorization. Local regulations of counties and municipalities must "not [be] in conflict with its charter *or with the general laws.*" (Emphasis added.)

A review of Idaho statutes relating to planning and zoning demonstrates clearly that the proposed initiative in this action is in conflict with the general zoning laws of the State of Idaho, and therefore the alternative writ must be made permanent.

In 1975, the Idaho legislature adopted a comprehensive recodification and revision of the laws of the state relating to planning and zoning, in the Local Planning Act of 1975. *See* I.C. §§ 67–6501 *et seq.;* 1975 Idaho Sess.Laws, ch. 188, § 2. Section 67–6504 of that Act directs cities and counties to plan and to zone. If the city councils and the boards of county commissioners do not exercise the powers conferred by the Local Planning Act, then the Act directs that planning and zoning commissions are to be established by ordinance to exercise all powers conferred by the Act, other than adopting ordinances, a power which is reserved to the governing board. I.C. § 67–6504. Exercise of the authority to zone and plan, whether by governing board or by the established commissions, is made mandatory by I.C. § 67–6503.

The Local Planning Act establishes explicit and express procedures to be followed by the governing boards or commissions when considering, enacting and amending zoning plans and ordinances. The acts and procedures required by the Act include: holding advisory and informational meetings and hearings in developing plans and zoning structures, I.C. § 67–6507; conducting a comprehensive planning process to prepare, implement and update the comprehensive plan, which is to be based upon specific delineated components, *see* I.C. § 67–6508; and, giving notice to interested parties and holding public hearings prior to the recommendation, adoption or amendment of a plan or zoning ordinance, I.C. § 67–6509 and I.C. § 67–6511.

■ In apparent response to our recent case of *Cooper v. Board of County Comm'rs,* 101 Idaho 407, 614 P.2d 947 (1980), the Idaho legislature recently added several procedural requirements to the Local Planning Act. *See* 1982 Idaho Sess.Laws, ch.

129, §§ 1, 2, 3. I.C. § 67–6534 requires the governing board to adopt, by ordinance, "procedures for the conduct of hearings." The approval or denial of any zoning or rezoning application is to be based upon articulable standards and criteria to be set forth in a comprehensive plan, and is to be in writing, accompanied by a statement of findings of fact and conclusions of law that explain the facts and criteria upon which the decision is based. *See* I.C. § 67–6535. Additionally, I.C. § 67–6536 requires that "[i]n every case ... where an appeal is provided for, a transcribable verbatim record of the proceeding shall be made and kept for a period of not less than six (6) months after a final decision on the matter," and that the governing board is required to record and retain minutes of the proceedings.

Finally, in I.C. § 67–6509(a), the legislature specifically mandated that *"[n]o plan shall be effective unless adopted by resolution or ordinance* by the governing board." (Emphasis added.) I.C. § 67–6511 requires each governing board "by ordinance adopted, amended, or repealed in accordance with the notice and hearing procedures ..." established in I.C. § 67–6509 to establish zones or zoning districts within its jurisdiction. Requests for amendments to zoning ordinances *"shall be submitted to the zoning or planning and zoning commission, which shall evaluate the request ..."* (emphasis added) and make their decisions after compliance with the notice and hearing provisions of I.C. § 67–6509. *See* I.C. §§ 67–6511(a), –(b), –(c). It is impossible for initiative zoning to comply with these legislative mandates.

■ Statutes must be interpreted to give effect to legislative intent and purpose. *See Gavica v. Hanson,* 101 Idaho 58, 60, 608

P.2d 861, 863 (1980); *Smith v. Dept. of Employment,* 100 Idaho 520, 522, 602 P.2d 18, 20 (1979). The legislature clearly intended that the authority to enact comprehensive plans, establish zoning districts and adopt amendatory ordinances be exercised exclusively by city and county legislative or governing bodies and pursuant to specific prescribed procedures. Thus, the comprehensiveness of zoning legislation in Idaho leaves no room for direct legislation by electors through an initiative election, and the initiative in question in this case is "in conflict with ... the general laws [the Local Planning Act of 1975]." *See also, City of Scottsdale v. Superior Court,* 103 Ariz. 204, 439 P.2d 290 (Ariz.1968); *Kelley v. John,* 162 Neb. 319, 75 N.W.2d 713 (Neb. 1956); *Forman v. Eagle Thrifty Drugs & Markets, Inc.,* 89 Nev. 533, 516 P.2d 1234 (Nev.1973); *Township of Sparta v. Spillane,* 125 N.J.Super. 519, 312 A.2d 154 (N.J.1973); *Smith v. Township of Livingston,* 106 N.J. Super. 444, 256 A.2d 85, aff'd, 54 N.J. 525, 257 A.2d 698 (N.J.1969); *Hancock v. Rouse,* 437 S.W.2d 1 (Tex.Civ.App.1969); *Bird v. Sorenson,* 16 Utah 2d 1, 394 P.2d 808 (Utah 1964); *Dewey v. Doxey-Layton Realty Co.,* 3 Utah 2d 1, 277 P.2d 805 (Utah 1954); *Leonard v. City of Bothell,* 87 Wash.2d 847, 557 P.2d 1306 (Wash.1976); *Lince v. City of Bremerton,* 25 Wash.App. 309, 607 P.2d 329 (Wash.App.1980): *see generally,* Annot., 72 A.L.R.3d 991 (1976). *But see, Arnel Development Co. v. City of Costa Mesa,* 28 Cal.3d 511, 169 Cal.Rptr. 904, 620 P.2d 565 (Cal. 1980); *Associated Home Builders v. City of Livermore,* 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (Cal.1976); *Margolis v. District Court,* 638 P.2d 297 (Colo.1981).[2]

■ Accordingly, we hold that the proposed initiative is in conflict with the Local

---

**2.** The authorities cited in support of our conclusion are not all based upon the ground that the initiative process in question conflicted with applicable zoning legislation, but do support the conclusion that the initiative process is inappropriate in zoning decisions.

The respondent argues that a number of the above cited cases relied specifically on the case of *Hurst v. City of Burlingame,* 207 Cal. 134, 277 P. 308 (Cal.1929), which was subsequently

overruled by *Associated Homebuilders v. City of Livermore,* 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (Cal.1976). Although some of the courts did cite *Hurst,* the courts did not rely solely on that decision in denying the authority to zone by initiative. The cases cited from jurisdictions outside California rely on their own rationale and provide sound authority for the proposition that the initiative process is ill-suited to zoning decisions.

Planning Act of 1975, and therefore the alternative writ restraining the election is made permanent.

DONALDSON, C.J., SHEPARD, J., and McFADDEN, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

### I.

The majority opinion reads well. I concede a strong inclination to join it, which is primarily premised on the belief that taking all things into consideration the result reached may in the long run be better for the people. However, over the many years I have generally remained apprehensive of the actions of those who profess to act for the benefit of the people—and necessarily must apply that scrutiny to myself as well, or plead guilty to hypocrisy. Where the right to legislate has been conferred directly upon the electorate of the cities of Idaho, Coeur d'Alene being such, it behooves a court to be extremely careful in disenfranchising that electorate. At the outset it is tempting to be motivated and guided by concerns as to the validity and desirability of the legislation, the enactment of which would be directly by the will of the people. In their briefs the parties have discussed the pro and con validity of the proposed ordinance. It appears that outwardly none of the other Court members consider or address the issue. Nonetheless that issue is ever presently lurking behind the curtains, and I touch upon it firstly, if only to clear the air.

Although the situation is in exact juxtaposition from that in *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), which involved a referendum and not an initiative, and where the election did take place and resulted in the defeat of a proposed change which would have enlarged, rather than diminished the use of the land there in question, we should be guided in part by language therein to the effect that "if hardship is occasioned by zoning restrictions, *administrative* relief is potentially available. Indeed, the very purpose of 'variances'

allowed by zoning officials is to avoid 'practical difficulties and unnecessary hardship.' 8 E. McQuillan, Municipal Corporation § 25.159, p. 511 (3d ed. 1965)." *Eastlake* at 679 n. 13, 96 S.Ct. at 2365 n. 13 (emphasis in original). In the same footnote the High Court noted that the situation involved an effort to change a reasonable zoning restriction: "No existing rights are being impaired; new use rights are being sought . . . ." *Id.* Earlier in its *Eastlake* opinion the High Court noted, again quoting McQuillan, that "'[m]ere diminution of market value or interference with the property owner's personal plans and desires relative to his property is insufficient to invalidate a zoning ordinance or to entitle him to a variance or rezoning.'" *Id.* at 674 n. 8, 96 S.Ct. at 2367 n. 8. At another place in the body of the *Eastlake* opinion, the Court was careful to point out that a zoning ordinance passed by initiative has no different standing than one legislated by the city council or commission.

"In basing its claim on federal due process requirements, respondent also invokes *Euclid v. Ambler Realty Co.,* 272 U.S. 365 [47 S.Ct. 114, 71 L.Ed. 303] (1926), but it does not rely on the direct teaching of that case. Under *Euclid,* a property owner can challenge a zoning restriction if the measure is 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' *Id.,* at 395 [47 S.Ct. at 121]. If the substantive result of the referendum is arbitrary and capricious, bearing no relation to the police power, then the fact that the voters of Eastlake wish it so would not save the restriction. As this Court held in invalidating a charter amendment enacted by referendum:

"'The sovereignty of the people is itself subject to those constitutional limitations which have been duly adopted and remain unrepealed.' *Hunter v. Erickson,* 393 U.S. [385], at 392 [89 S.Ct. 557, at 561, 21 L.Ed.2d 616].

"See also *Lucas v. Colorado Gen. Assembly,* 377 U.S. 713, 736–737 [84 S.Ct. 1459,

1473, 12 L.Ed.2d 632] (1964); *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 638 [63 S.Ct. 1178, 1185, 87 L.Ed. 1628] (1943).

"But no challenge of the sort contemplated in *Euclid v. Ambler Realty* is before us. The Ohio Supreme Court did not hold, and respondent does not argue, that the present zoning classification under Eastlake's comprehensive ordinance violates the principles established in *Euclid v. Ambler Realty.* If respondent considers the referendum result itself to be unreasonable, the zoning restriction is open to challenge in state court, where the scope of the state remedy available to respondent would be determined as a matter of state law, as well as under Fourteenth Amendment standards. That being so, nothing more is required by the Constitution." 426 U.S. at 676–78, 96 S.Ct. at 2363–64.

Where as here we do not speculate on the outcome of the initiative election, it would be both premature and improper to in any way allude to the validity of the proposed ordinance. Moreover, when and if such a proposition were to come up for judicial examination, it would undoubtedly be on an evidentiary record—where as in this case we are confronted with deciding a single issue of law.

At presentation of oral argument, counsel for respondents advised us as follows:

"California and Oregon both have, and Colorado I believe, all have comprehensive zoning plans every bit as detailed and statutory schemes every bit as detailed as ours, perhaps even more so is the situation in Oregon. I think the method to resolve this, as I have suggested, is not whether the initiative process itself conflicts with the zoning process, but to require in every instance that whatever is passed must also comply with a comprehensive plan. Petitioners said what we have, what has been proposed here, does not comply with that and we say that it does. That issue is not really before you because you don't have the plan, you don't have the rest of what's there before

you. But I think that's the question. That's the ultimate control. Plus, the second ultimate control is that if you ultimately pass some sort of law by initiative or referendum that really takes the property away from a particular individual, he's going to have an adequate remedy at another time and another place to follow through.

. . . .

"The adequate remedy is the same adequate remedy that is given to any person who is impacted by a zoning ordinance that constitutes what we call a taking. You end up in the situation in *Agins v. City of Tiburon* [447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980)] case before the U.S. Supreme Court and other sorts of things where you end up in a situation where the initiative is no different than the situation with any other city or county ordinance. If there is an ordinance that ends up saying this is a taking of property or this is such a downzoning of property that you have suffered a financial loss, your property has been damaged, you have a remedy, and, as you gentlemen are aware from the judicial conference right now, the question before the courts is whether the remedy is one of declaring the ordinance void or whether it's one of getting compensation. But that's the remedy.

. . . .

"Compensation was not awarded there because the Supreme Court in its infinite wisdom decided that they hadn't exhausted the administrative remedies . . .

. . . .

". . . that was the issue that was raised and that was the discussion, but again an initiative and referendum stands no different, no higher, than any ordinance passed by any city council, and, just as the legislature can repeal any initiative or referendum, so may a city council appeal, amend, change anything that's passed by initiative or referendum."

A question from the Bench inquired as to whether it was being suggested that there is a law in Idaho which allows compensation

to a landowner for damages resulting from the impact of the zoning ordinance. Counsel continued on:

"There is not at the present time. I have no doubt that if something should happen of a major nature that that could well be. You have the choice of nullifying or not. The only case we have is the *Dawson v. Blaine County* [98 Idaho 506, 567 P.2d 1257 (1977)] where Justice Bistline for the court said that where you don't change the land use, you have not suffered that sort of damage. I again think that those are questions that will be ultimately determined at some later point rather than getting into specifics here of whether a particular person have. We're not questioning the fact that these people have the right to bring this action. We are saying that the time to determine whether or not they've been substantially hurt, or would be, is not now."

It is thusly made abundantly clear that the parties fully realize that the only issue resolved today is the respondent's right to go ahead with the proposed election, and, although the parties have discussed the validity of the proposed ordinance, I do not become involved or intimate any view in that regard.

## II.

It is clear that the entire court membership recognizes that the electorate of a city has the right of direct legislation. Four members of the Court are of the view that that right is in direct conflict with the Idaho zoning statutes which place the zoning power in governing boards and establish procedures for zoning, amending those procedures, and obtaining variances. The Court is of the opinion that direct legislation by the people cannot coexist with those statutory procedures. With all due deference, I am not all that certain that such

coexistence is an erroneous concept, nor am I persuaded that direct legislation by the people must give way to the more bureaucratic procedures. Let us proceed to see if the legislature has in fact so decreed, directly or indirectly.

## III.

Although the Idaho Constitution does not provide municipalities or their residents with the power to enact municipal ordinances through the initiative process, the 1911 legislature provided that: "The people of [a] city [meeting certain qualification], ... shall have power of direct legislation by the initiative and the referendum." 1911 Idaho Sess.Laws ch. 82, § 23 at 301. Since that time there have been changes in the qualifications required of cities allowed to use the initiative process and the procedures for holding initiative elections, but the statutory *power* of "direct legislation by the initiative and referendum" has remained essentially unchanged.[1] I.C. § 50–501 now provides:

"Initiative and referendum.—The city council of each city shall provide by ordinance for direct legislation by the people through the initiative and referendum. Minimum requirements of the ordinance adopted shall be as follows: (1) petitioners for initiative or referendum shall be equal to twenty percent (20%) of the total number of voters registered to vote at the last general election in the city; (2) petitions for referendum shall be filed not less than sixty (60) days following the final adoption of the ordinance to be subject to referendum; (3) a special election for initiative or referendum shall be provided not more than ninety (90) days following the certification of the petition, provided that in the event a municipal election will occur within the ninety (90) days, the initiative or referendum shall be

1. 1911 Idaho Sess.Laws ch. 82, § 23 at 280 was codified in I.C.L. 162:63 (1918), then recodified in I.C.S. § 4234 (1919), I.C.A. § 49–3301 (1932), I.C. § 50–3901 (1947), and as amended in I.C. § 50–501 (1967). In 1977 the statute was substantially amended to consolidate and amend some of the procedural requirements, make city initiative ordinances mandatory and remove a population requirement for qualifying cities. *See* 1977 Idaho Sess.Laws ch. 144, § 2 at 320. In 1978, as noted *infra,* the statute was again amended to specifically exclude bond elections from the initiative process. *See* 1978 Idaho Sess.Laws ch. 343, § 1 at 882.

submitted at the time of the municipal election; (4) requirements for signature, verification of valid petitions, printing of petition, and time limits, except as expressly modified herein, shall be as nearly as practicable as provided in sections 34–1701 through 34–1705, Idaho Code. This section does not apply to bond elections."

Although I.C. § 50–501 imposes upon cities the obligation to adopt ordinances which set forth certain substantive and procedural rules governing initiative elections, the *power* to legislate by initiative has not been altered since it was first granted to "the people" of Idaho cities in 1911.

### A.

The statute authorizes "direct legislation by the people through the initiative and referendum." Any matter which would otherwise be the proper subject of municipal legislation is, then, according to the plain language of the statute, a proper subject for initiative election.

Article XII, section 2 of the Idaho Constitution provides:

"Local police regulations authorized.— Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws."

We have long recognized that the power to zone is one of the police powers granted to counties and cities by this constitutional provision. *Dawson Enterprises, Inc. v. Blaine County,* 98 Idaho 506, 567 P.2d 1257 (1977); *Cole-Collister Fire Protection District v. City of Boise,* 93 Idaho 558, 468 P.2d 290 (1970); *City of Idaho Falls v. Grimmett,* 63 Idaho 90, 117 P.2d 461 (1941). The fact that zoning is one of the police powers generally available to local governments is almost universally recognized. *See* 8 McQuillan, Municipal Corporations § 25.05 (3d ed. 1981). Since zoning is a proper subject for municipal legislation, and since the initiative statute provides for "direct legislation" through the initiative process, it would appear that zoning is within the initiative authority originally granted in 1911 and carried forward to I.C. § 50–501.

Any doubts as to whether I.C. § 50–501 grants the power to adopt zoning ordinances by initiative must be resolved in favor of such a grant. It is a well settled rule of construction that "grants of power to municipal corporations to adopt municipal legislation by exercise of initiative or referendum are to be liberally construed, to the ends of permitting rather than restricting the power .... " 5 McQuillin, Municipal Corporations § 16.51 (3d ed. 1981) (footnote omitted). *See Municipality of Anchorage v. Frohne,* 568 P.2d 3 (Alaska 1977); *Farley v. Healey,* 67 Cal.2d 325, 62 Cal.Rptr. 26, 431 P.2d 650 (Cal.1967); *City of Glendale v. Buchanan,* 195 Colo. 267, 578 P.2d 221 (Colo.1978).

Additionally, in 1978 the legislature amended I.C. § 50–501 by adding a sentence stating: "This section does not apply to bond elections." *See* 1978 Idaho Sess. Laws ch. 343, § 1 at 882. Respondents correctly cite us to *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 639–40, 586 P.2d 1346, 1355–56 (1978) for the rule of construction to be applied to statutes of general application which contain specific exceptions. In that case we stated that:

"[T]his jurisdiction has generally subscribed to the rule of statutory construction which states, *expressio unius est exclusio alterius:*

'Furthermore, "[i]t is a universally recognized rule of the construction that, where a constitution or statute specifies certain things, the designation of such things excludes all others." *Peck v. State,* 63 Idaho 375, 120 P.2d 820, 822; *Drainage Dist. No. 2 v. Ada County,* 38 Idaho 778, 786, 226 P. 290; *People v. Goldman,* 1 Idaho 714.'

*Poston v. Hollar,* 64 Idaho 322, 330–331, 132 P.2d 142, 146 (1942). In the present case, application of that rule leads to the conclusion that by expressly prohibiting strikes by firefighters during the term of a contract, the legislature either impliedly recognized their right to strike after expiration of the contract or, at a mini-

mum, opened the door to such contractual agreement as the parties might reach in that regard."

While a 1978 amendment does not speak directly to the intent of the legislature when it conferred initiative authority upon municipalities in 1911, the amendment and the quoted rule add to our conclusion concerning the plain language of I.C. § 50–501. It is thus evident that, in the absence of any separate limiting factors, I.C. § 50–501's initiative authority includes the authority to zone by initiative.

Other states which have considered the question have also concluded that initiative power, in the abstract, includes the power to adopt zoning ordinances through the initiative process. *See San Diego Building Contractors Association v. City Council of San Diego,* 13 Cal.3d 205, 118 Cal.Rptr. 146, 529 P.2d 570 (Cal.1974); *Allison v. Washington County,* 24 Or.App. 571, 548 P.2d 188 (Or.App.1976); *Cf. McKee v. City of Louisville,* 200 Colo. 525, 616 P.2d 969 (Colo.1980) (denying writ of prohibition to halt initiative election on zoning ordinance).[2] *See generally* Note, Zoning and the Use of Initiative, 1975 U.Ill.L.F. 693, Annot., 72 A.L. R.3d 1030 (1976).

### B.

A number of jurisdictions have held that zoning is not a proper subject for the initiative process. The reasoning in these cases falls into two categories. Some courts have held that the initiative process does not apply to zoning because zoning decisions are essentially administrative, rather than legislative. *See Smith v. Township of Livingston,* 54 N.J. 525, 257 A.2d 698 (N.J.1969) (initiative authority granted *after* enactment of zoning act not intended to impliedly repeal zoning act; referring to administrative expertise of zoning authorities); *Forman v. Eagle Thrifty Drugs & Markets, Inc.,* 89 Nev. 533, 516 P.2d 1234 (Nev.1973) (holding that all zoning is "administrative" and that the fact that state statute requires

notice and hearing prior to zone change means due process also requires notice and hearing—citing subsequently overruled California case); *Hancock v. Rouse,* 437 S.W.2d 1 (Tex.Civ.App.1969) (concluding that zoning requires administrative expertise and is therefore not subject to initiative—case revolved entirely on interpretation of municipal charter); *Dewey v. Doxey-Layton Realty Co.,* 3 Utah 2d 1, 277 P.2d 805 (Utah 1954) (state zoning act takes precedent over initiative authority, relying heavily on subsequently overruled California case); *Lince v. City of Bremerton,* 25 Wash.App. 309, 607 P.2d 329 (Wash.App.1980) (holding state law delegated zoning authority to city council, not municipal corporation, use of initiative would therefore conflict with state law which made making zoning administrative—citing previously overruled California case but not mentioning that that case was overruled). Other courts have suggested that zoning through initiative offends the due process clause of the United States Constitution. *See e.g., City of Scottsdale v. Superior Court,* 103 Ariz. 204, 439 P.2d 290 (Ariz.1968) (dictum that notice and hearing are required in all zoning matters—case decided on basis of lack of authority); *Scott v. City of Indian Wells,* 6 Cal.3d 541, 99 Cal.Rptr. 745, 492 P.2d 1137 (Cal.1972) (application for conditional use permit, notice and hearing required under those circumstances—case erroneously relied upon by other jurisdictions for due process point argued by petitioners). *See generally San Diego Building Contractors Association v. City Council of San Diego,* 13 Cal.3d 205, 118 Cal.Rptr. 146, 529 P.2d 570, 576–78 (Cal. 1974) (rejecting due process argument similar to petitioners' and pointing out failure to distinguish between quasi-judicial and quasi-legislative acts).

There are several reasons that the reasoning in these cases is less than persuasive. First, most of the cases relied on the California case of *Hurst v. City of Burlingame,* 207 Cal. 134, 277 P. 308 (Cal.1929), which

---

**2.** Petitioners would have us distinguish these cases because in all three states the initiative power is granted in the states' constitutions, rather than by statute, as in Idaho. That distinction, while it is relevant to petitioners' argument that there is a conflict between the statutory provisions for initiative and land use planning, is *not* relevant to determining whether zoning may be the subject of an initiative election *at all.*

was overruled by *Associated Home Builders v. City of Livermore,* 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (Cal.1976). *Associated Home Builders* is the much better reasoned opinion and, as noted in part III, *infra,* clearly points out the flaws in the *Hurst* case. *Associated Home Builders* also necessarily points out the flaws in those cases which rely on *Hurst.* Second, our prior cases clearly recognize that zoning, at least zoning that applies to large tracts or multiple parties, *is* a quasi-legislative function. *See Dawson Enterprises, Inc., supra; Cole-Collister Fire Protection District v. Boise, supra.* Third, none of the statutes involved in those jurisdictions have language similar to ours. Texas, for example, does not have either a ·constitutional or statutory initiative provision. Constitutional and statutory limitations upon the initiative authority to zone which was originally granted in 1911 are discussed more fully *infra.* It is readily concluded here that when the legislature gave Idaho municipalities the power to use the initiative process to adopt "direct legislation," that power included the power to zone by initiative.

## IV.

### A. ·

Petitioners argue that even if the initiative authority granted by I.C. § 50–501 includes the power to adopt zoning ordinances through initiative, there are statutory and constitutional limitations upon that grant of power. Petitioners assert that the Local Planning Act of 1975, I.C. § 67–6501, *et seq.* which sets forth specific procedures for county and city land use planning and regulation, conflicts with the use of the initiative process to adopt zoning ordinances. The petitioners' argument is that the Local Planning Act was intended to supercede and impliedly repeal the initiative zoning authority originally granted to municipalities in 1911.[3] The general rule is that repeal by implication is not favored in law, even in the face of strong language suggesting repeal. If effect can reasonably be given to both an earlier and a later statute, we must assume that the earlier statute remains in force. *See Jones v. Manhart,* 120 Ariz. 338, 585 P.2d 1250 (Ariz.App. 1978); *Flores v. Workmen's Compensation Appeals Board,* 11 Cal.3d 171, 113 Cal.Rptr. 217, 520 P.2d 1033 (Cal.1974); *Colorado State Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 599 P.2d 869 (Colo. 1979); *Natatorium Preservation Committee v. Edelstein,* 55 Haw. 55, 515 P.2d 621 (Haw.1973); *Estate of Suesz,* 228 Kan. 275, 613 P.2d 947 (Kan.1980); *Ingersoll v. Mattson,* 47 Or.App. 463, 614 P.2d 1197 (Or.App.

**3.** Petitioners devote a large part of their briefs to discussing article XII, section 2 of the Idaho Constitution, which provides:

   "Local police regulations authorized.—Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws."

   Petitioners argue that if using the initiative process to adopt a zoning ordinance is "in conflict" with the Local Planning Act, then such a procedure is constitutionally prohibited by article XII, section 2. Petitioners make several points in support of their argument.

   We need not consider these points, however, because the conflict in this case, if any, is between two state statutes—I.C. § 50–501, which grants initiative powers to municipalities, and I.C. §§ 67–6501 *et seq.,* which grants zoning powers to municipalities. Article XII, section 2 of the Idaho Constitution governs only conflicts between municipal and state regulations. While it is true that the city of Coeur

d'Alene has an ordinance governing initiative elections, that ordinance was adopted pursuant to the authority specifically conferred by I.C. § 50–501, and the election processes set forth in the ordinance are dictated by I.C. § 50–501. Petitioners' citations to *Citizens for Better Government v. County of Valley,* 95 Idaho 320, 508 P.2d 550 (1973), and *San Pedro North, Ltd. v. City of San Antonio,* 562 S.W.2d 260, *cert. denied* 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1978), are thus inapposite. In *Citizens,* the *county commissioners* simply ignored the procedural requirements of the Local Planning Act in adopting a zoning ordinance, and we held that such conduct was in conflict with the Act. Here, the *citizens* of a city wish to follow a separately authorized elective procedure for adopting a zoning ordinance. In *San Pedro,* the court was addressing a municipal charter. Texas, at least at that time, had no constitutional or statutory provisions for initiative or referendum, except for a few specific areas. 562 S.W.2d at 262.

1980); *U.S. Oil & Refining Co. v. State Department of Ecology,* 27 Wash.App. 102, 615 P.2d 1340 (Wash.App.1980).

Petitioners have not met their burden of establishing that the legislature, by adopting the Local Planning Act of 1975, intended to impliedly repeal the authority of municipalities and their residents to adopt zoning ordinances through the initiative process. Neither the Act itself nor the brief legislative history which is available indicate such an intent. In fact, the first section of amended S.B. No. 1094 (the Local Planning Act legislation) provided "[t]hat Chapters 11 and 12, Title 50, and Chapter 38, Title 31, Idaho Code, be, and the same are hereby repealed." 1975 Idaho Sess. Laws ch. 188 at 516. *The repeal of other zoning legislation, with no reference to the initiative authority, indicates that the legislature considered other statutes governing zoning and decided to repeal and replace some of those statutes, but leave the initiative authority intact.*

### B.

Although petitioners do not direct their art. 12, § 2 argument to the alleged conflict between the Coeur d'Alene initiative ordinance and the Local Planning Act—*see* note 3, *supra*—to the conflict between the initiative *statute* and the Land Use Planning Act, several of petitioners' points in this regard bear discussion. First petitioners point out that the planning process set up by the Local Planning Act envisions that comprehensive plans, promulgated by experts, with the aid of citizen input, will govern the enactment of zoning ordinances, and that an initiative process circumventing this procedure results in haphazard and arbitrary zoning—contrary to the purposes of the Act. Several cases which have found a conflict between land use planning acts and initiative acts have advanced this argument as a policy reason in support of their ultimate conclusion. *See Lince v. City of Bremerton,* 25 Wash.App. 309, 607 P.2d 329 (Wash.App.1980). However, the mere fact that the initiative process is used to adopt

an ordinance does not mean that the ordinance will be in conflict with a comprehensive plan or that the planning process is thereby circumvented. In fact, any ordinance which *is* in conflict with a comprehensive plan may be judicially struck down regardless of the manner of its adoption. Such an ordinance *would* violate art. XII, § 2 of the Idaho Constitution because it would be a local regulation "in conflict" with a state law. *See State v. Barsness,* 102 Idaho 210, 628 P.2d 1044 (1981). Also note that the complexity of land use regulation does not compel a different conclusion. Most initiative elections involve complex issues, but it would be poor jurisprudence indeed to remove a subject matter from the initiative process based upon an assumption of the intelligence of the electorate. As one commentator put it:

"[D]eciding how to vote on a proposal to limit future construction in a coastal zone to 30 feet seems simple compared to deciding how to vote on Proposition 22 on the November, 1972 California ballot, which involved complex agricultural labor relations. Eleven pages of explanatory material accompanied the sample ballot mailed to voters." Note, Zoning and the Use of Initiative, 1975 U.Ill.F. 693, 703 n. 71.

### C.

Petitioners next assert that the procedures for adopting zoning ordinances which are set forth in the Local Planning Act—*i.e.,* hearing and notice requirements, *see* I.C. §§ 67–6507 and –6509—insure that due process of law is granted to property owners affected by zoning changes[4] and, together with other procedural requirements, was intended to constitute the sole and exclusive method of adopting ordinances. Again, it must be noted that nothing in the Local Planning Act reveals an intent to make the processes of that Act *the exclusive* method of adopting zoning ordinances. No necessary conflict arises from the existence of two separate methods of adopting zoning ordinances; there may be a conflict

4. As to petitioners' due process argument, *see* part III of this opinion, *infra.*

between the *results* of the two processes, in which case the result reached under the Local Planning Act would necessarily prevail. *See Arnel Development Co. v. City of Costa Mesa,* 28 Cal.3d 511, 169 Cal.Rptr. 904, 620 P.2d 565, 573 (Cal.1980) ("[Initiative z]oning changes must conform to the city's general plan ... which must in turn conform to requirements established by state statute.").

In *Associated Home Builders v. City of Livermore,* 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (Cal.1976), the California Supreme Court rejected an identical argument and overruled a previous case, *Hurst v. City of Burlingame,* 207 Cal. 134, 277 P. 308 (1929), which had rested on "conflict" grounds. In so doing, the *Associated Home Builders* court stated:

"First, *Hurst,* erroneously contriving a conflict between state zoning statutes and the initiative law, set out to resolve that presumed conflict. No conflict occurs, however; the Legislature never intended the notice and hearing requirements of the zoning law to apply to the enactment of zoning initiatives.... The Legislature *plainly drafted the questioned provisions of the zoning law with a view to ordinances adopted by vote of the city council;* the provisions merely add certain additional procedural requirements to those already specified in Government Code sections 36931–36937 for the enactment of ordinances in general. Procedural requirements which govern *council* action, however, generally do not apply to initiatives, any more than the provisions of the initiative law govern the enactment of ordinances in council. No one would contend, for example, that an initiative of the people failed because a quorum of councilmen had not voted upon it, any more than one would contend that an ordinary ordinance of a council failed because a majority of voters had not voted upon it."

[After setting forth the constitutional source for California's initiative statute as a possible alternative ground for its holding, the court continued.]

"Thus both precedent and established principles of judicial construction dictate the conclusion that *Hurst* erred in holding the notice and hearing provisions of the Zoning Act of 1917 applied to zoning ordinances enacted by initiative. Resting upon the precepts that statutes which are apparently in conflict should, if reasonably possible, be reconciled (see, e.g., *Warne v. Harkness* (1963) 60 Cal.2d 579, 588, 35 Cal.Rptr. 601, 387 P.2d 377; *Pacific Motor Transport Co. v. State Bd. of Equalization* (1972) 28 Cal.App.3d 230, 235, 104 Cal.Rptr. 558); that a statute should be construed to 'eliminate ... doubts as to the provision's constitutionality' (*In re Kay* (1970) 1 Cal.3d 930, 942, 83 Cal.Rptr. 686, 694, 464 P.2d 142, 150); that the initiative power must be broadly construed, resolving all doubts in favor of the reserved power (see cases cited p. 45 of 135 Cal.Rptr., p. 477 of 557 P.2d, *ante,* and fn. 6), we resolve that *Hurst v. Burlingame, supra,* 207 Cal. 134, 277 P. 308, was incorrectly decided and is therefore overruled." 135 Cal.Rptr. at 50–51, 557 P.2d at 479–80 (emphasis added) (footnotes omitted).

Persuasive is the reasoning of the *Associated Home Builders* court that simply because two separate processes for adopting an ordinance exist does not mean that there is an irresolvable conflict between the two enabling statutes. I.C. §§ 50–901 through –903 govern the manner in which cities may adopt and record ordinances, yet it would be ludicrous to say that because there is a separate procedure for the adoption of ordinances by the city, no ordinance may be adopted by initiative. Additionally, the Local Planning Act by its terms applies to actions of "governing boards," (defined as city councils or boards of county commissioners—I.C. § 67–6504) whereas the initiative authority is given to "the people." I.C. § 50–501. There is no conflict between I.C. § 50–501 and the Local Planning Act such as to compel us to conclude that the Local Planning Act was intended to impliedly repeal the authority to adopt zoning ordinances by initiative originally granted in 1911.

## V.

Petitioners next argue that to allow the proposed zoning ordinance to be adopted by initiative would deprive them of a property interest without due process of law, and would therefore violate the fourteenth amendment to the United States Constitution. Petitioners assert that under the due process clause, they are entitled to notice that the proposed ordinance might be adopted and an opportunity to be heard upon the matter by the decision making body. Undoubtedly in some contexts due process requires notice and a hearing for affected property owners prior to adoption of a zoning ordinance. *See Cooper v. Board of County Commissioners,* 101 Idaho 407, 614 P.2d 947 (1980); *Citizens For Better Government v. County of Valley,* 95 Idaho 320, 508 P.2d 550 (1973). However, this does not mean that adoption of zoning ordinances through the initiative process necessarily violates petitioners' due process rights. "Zoning is essentially a political, rather than a judicial matter, over which the legislative authorities have, generally speaking, complete discretion." *Dawson Enterprises, Inc. v. Blaine County,* 98 Idaho 506, 511, 567 P.2d 1257, 1262 (1977). Because the adoption or amending of zoning ordinances is an essentially legislative function, *see Cooper v. Board of County Commissioners,* 101 Idaho 407, 614 P.2d 947 (1980), those courts which have considered the matter have generally held that using the initiative process to adopt or amend zoning ordinances does not deprive those affected by such ordinances of due process of law. *See San Diego Building Contractors Association v. City Council,* 13 Cal.3d 205, 118 Cal.Rptr. 146, 529 P.2d 570, 573 (Cal.1974) ("Since enactment of the ... general zoning ordinance through the initiative process was unquestionably a legislative, as distinguished from adjudicative, act, the constitutional requirements of 'notice' and 'hearing' do not apply."); *Montgomery*

*County v. Woodward & Lathrop, Inc.,* 280 Md. 686, 376 A.2d 483 (Md.App.1977) (rezoning of all properties within a central business district is legislative, not quasi-judicial, so no due process right to judicial or trial-type hearing); *Allison v. Washington County,* 24 Or.App. 571, 548 P.2d 188, 191 (Or. App.1976) ("In this context, [an initiative zoning ordinance that affects a large area in disparate ownership] a substantial majority of cases hold there is no constitutional right to notice or hearing ...."); *see generally* Note, Zoning and the Use of Initiative, 1975 U.Ill.L.F. 693. The difference in procedural requirements for quasi-judicial and legislative actions by the government may be traced back to *Bi-Metallic Co. v. Colorado,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915), in which the Supreme Court held that when "a rule of conduct applies to more than a few people ... [t]heir rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." [5] The zoning ordinance which is the subject of the proposed initiative election applies to the entire city of Coeur d'Alene.[6] We are not faced here with an ordinance which would apply to only one parcel or one property owner, *see Auckland v. Board of Commissioners of Multnomah County,* 21 Or.App. 596, 536 P.2d 444 (Or.App.1975), but rather one which applies to a broad enough area and constituency to clearly fall into the "quasi-legislative" category. *See San Diego Building Contractors Association, supra* (ordinance restricting building height to 30 feet in all of San Diego between Interstate 5 and the ocean is quasi-legislative). Older cases which have held that notice and hearing must necessarily precede adoption or amendment of *any* zoning ordinance have, as noted in part II of this opinion, failed to make the distinction between quasi-judicial and quasi-legislative ordinances. *See And-*

---

5. *Bi-Metallic* was heavily relied upon by this Court in *Idaho State Tax Commission v. Staker,* 104 Idaho ———, 658 P.2d 350 (1982), but given no mention in today's majority opinion.

6. The proposed ordinance is appended to this opinion; it addresses the entire shoreline within the city, the entire downtown area, and the entire city outside the downtown area, in separate sections of the ordinance.

628

over *Development Corp. v. City of New Smyrna Beach,* 328 So.2d 231 (Fla.App.1976) (disagreeing with another panel of the Florida Court of Appeals and relying on *Taschner v. City Council of City of Laguna Beach,* 31 Cal.App.3d 48, 107 Cal.Rptr. 214 (1973), which was disapproved as to the due process issue in *San Diego Building Contractors Association v. City Council of San Diego,* 13 Cal.3d 205, 118 Cal.Rptr. 146, 529 P.2d 570, 577 (Cal.1974), and *Forest City Enterprises, Inc. v. City of Eastlake,* 41 Ohio St.2d 187, 324 N.E.2d 740 (Ohio 1975), which was reversed as to its due process holding in *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), but which did *not* hold in the first instance that due process requires notice and a hearing in all zoning matters). We agree with the statement of Justice Holmes, writing for a unanimous Court in *Bi-Metallic,* that: "The question . . . is whether all individuals have a constitutional right to be heard before a matter can be decided in which all are equally concerned . . . *[t]he answer of this court in the State Railroad Tax Cases . . . was that it was hard to believe that the proposition was seriously made.*" 239 U.S. at 445, 36 S.Ct. at 142 (emphasis added).

Exhibit A

PROPOSED INITIATIVE ORDINANCE

SHORELINE INITIATIVE

"SHALL TITLE 17, COEUR D'ALENE MUNICIPAL CODE BE AMENDED:

1. BY THE ADDITION OF A NEW SECTION PROHIBITING THE ERECTION, WITHIN THE CITY LIMITS OF THE CITY OF COEUR D'ALENE, OF NEW BUILDINGS WITHIN ONE HUNDRED FIFTY FEET (150') OF THE SHORELINE:

   A. IN EXCESS OF THIRTY FEET (30') IN HEIGHT IN THE DOWNTOWN BUSINESS AREA (BETWEEN FIRST STREET AND SEVENTH STREET).

   B. IN EXCESS OF TWENTY FEET (20') IN HEIGHT OUTSIDE THE DOWNTOWN BUSINESS AREA.

2. BY PROHIBITING THE ISSUANCE OF A BUILDING PERMIT FOR ANY CONSTRUCTION WITHIN FORTY FEET (40') OF THE SHORELINE OUTSIDE THE DOWNTOWN BUSINESS AREA WITHIN THE CITY OF COEUR D'ALENE?"