107 P.3d 409

STATE of Hawai'i, Plaintiff–Appellant

v.

Kyle Evan DOMINGUES,
Defendant–Appellee.

No. 25208.

Supreme Court of Hawai'i.

Feb. 22, 2005.

Mark Yuen, deputy prosecuting attorney, on the briefs, for the plaintiff-appellant, State of Hawai'i.

James S. Gifford, deputy public defender, on the briefs, for the defendant-appellee, Kyle Evan Domingues.

MOON, C.J., and LEVINSON and DUFFY, JJ.; and ACOBA, J., Dissenting with whom NAKAYAMA, J. Joins.

**PER CURIAM.**

The plaintiff-appellant State of Hawai'i [hereinafter, "the prosecution"] appeals from the order of the circuit court of the first circuit, the Honorable Sandra A. Simms presiding, entered on June 21, 2002, dismissing without prejudice the indictment against the defendant-appellee Kyle Evan Domingues.

On appeal, the prosecution contends: (1) that the circuit court erred in dismissing the indictment against Domingues, inasmuch as the prosecution properly charged Domingues under the statute that was in effect on the date Domingues allegedly committed the offense, (2) that Hawai'i Revised Statutes (HRS) §§ 291E–61(a) and 291E–61(b)(4) (Supp.2001)[1] "substantially reenacted" HRS

1. HRS § 291E–61 provided in relevant part:

(a) *A person commits the offense of operating a vehicle under the influence of an intoxicant* if the person operates or assumes actual physical control of a vehicle:

(1) While *under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;*

(2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;

(3) *With .08 or more grams of alcohol per one hundred ten liters of breath;* or

(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

(b) A person committing the offense of operating a vehicle under the influence of an intoxicant *shall be sentenced* as follows without possibility of probation or suspension of sentence:

(1) For the first offense, or any offense not preceded within a five-year period by a conviction for an offense under this section or section 291E–4(a):

(A) A fourteen-hour minimum substance abuse rehabilitation program, including education and counseling, or other comparable program deemed appropriate by the court; and

(B) Ninety-day prompt suspension of license and privilege to operate a vehicle with absolute prohibition from operating a vehicle during the suspension period, or the court may impose, in lieu of the ninety-day prompt suspension of license, a minimum thirty-day prompt suspension of license with absolute prohibition from operating a vehicle and, for the remainder of the ninety-day period, a restriction on the license that allows the person to drive for limited work-related purposes and to participate in substance abuse treatment programs; and

(C) Any one of the following:

(i) Seventy-two hours of community service work; .

(ii) Not less than forty-eight hours and not more than five days of imprisonment; or

(iii) A fine of not less than $150 but not more than $1,000.

(2) For an offense that occurs within five years of a prior conviction for an offense under this section or section 291E–4(a):

(A) Prompt suspension of license and privilege to operate a vehicle for a period of one year with an absolute prohibition from operating a vehicle during the suspension period;

(B) Either one of the following:

(i) Not less than two hundred forty hours of community service work; or

(ii) Not less than five days but not more than fourteen days of imprisonment of which at least forty-eight hours shall be served consecutively; and

(C) A fine of not less than $500 but not more than $1,500.

(3) For an offense that occurs within five years of two prior convictions for offenses under this section or section 291E–4(a):

(A) A fine of not less than $500 but not more than $2,500;

(B) Revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years; and

(C) Not less than ten days but not more than thirty days imprisonment of which at least forty-eight hours shall be served consecutively.

(4) *For an offense that occurs within ten years of three or more prior convictions for offenses under this section, section 707–702.5, or section 291E–4(a):*

(A) Mandatory revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years;

(B) Not less than ten days imprisonment, of which at least forty-eight hours shall be served consecutively; and

(C) Referral to a substance abuse counselor as provided in subsection (d).

§§ 291–4.4(a)(1) and 291–4.4(a)(2) (Supp. 2000),[2] (3) that citation to the repealed statute was consistent with the *ex post facto* rule, and (4) that assuming *arguendo* HRS § 291–4.4 was incorrectly cited in the indictment, such a mistake was a "formal defect that did not prejudice or mislead [Domingues] to his prejudice."

We hold that, as to the description of the offense, HRS § 291E–61, which relates to operating a vehicle under the influence of an intoxicant, substantially reenacted HRS § 291–4.4, which pertained to the offense of habitually driving under the influence of intoxicating liquor or drugs. Accordingly, we

> An offense under this paragraph is a class C felony.
>
> . . . .
>
> (d) Whenever a court sentences a person pursuant to subsection (b), it also shall require that the offender be referred to the driver's education program for an assessment, by a certified substance abuse counselor, or the offender's substance abuse or dependence and the need for appropriate treatment. The counselor shall submit a report with recommendations to the court. The court shall require the offender to obtain appropriate treatment if the counselor's assessment establishes the offender's substance abuse or dependence. All costs for assessment and treatment shall be borne by the offender.
>
> (Emphases added). Effective January 1, 2004, the legislature amended HRS § 291E–61 by deleting the felony offense previously described in subsection (b)(4). *See* 2003 Haw. Sess. L. Act 71, § 3 at 125–26. Nevertheless, Act 71 also recodified HRS § 291E–61(b)(4) as a "separate offense" under HRS § 291E–61.5, entitled "[h]abitually operating a vehicle under the influence of an intoxicant." *See* 2003 Haw. Sess. L. Act 71, § 1 at 123–24. The significance of this amendment was to separate the felony offense from the apparent assortment of petty misdemeanor offenses codified in HRS §§ 291E–61(b)(1) through 291E–61(b)(3). *See* Hse. Conf. Com. Rep. No. 18, in 2003 House Journal, at 1706–07; Sen. Conf. Com. Rep. No. 18, in 2003 Senate Journal, at 953–54.

2. HRS § 291–4.4 provided in relevant part:

> (a) A person commits the offense of habitually driving under the influence of intoxicating liquor or drugs if, *during a ten-year period the person has been convicted three or more times for a driving under the influence offense;* and
>
> (1) The person operates or assumes actual physical control of the operation of any vehicle *while under the influence of intoxicating liquor,* meaning that the person is under the influence of intoxicating liquor *in an amount sufficient to impair the person's normal mental faculties or abili-*

vacate the circuit court's June 21, 2002 order dismissing without prejudice the indictment against Domingues and remand the present matter to the circuit court for further proceedings.

## I. BACKGROUND

On March 21, 2002, an Oʻahu grand jury returned an indictment against Domingues charging him with the following offenses: (1) habitually driving under the influence of intoxicating liquor (Count I), in violation of HRS § 291–4.4, *see supra* note 2; (2) driving without lights (Count II), in violation of HRS § 291–25(a) (1993); and (3) driving while li-

> *ty to care for oneself and guard against casualty;*
>
> (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood *or .08 or more grams of alcohol per two hundred ten liters of breath;* or
>
> (3) A person operates or assumes actual physical control of the operation of any vehicle while under the influence of any drug which impairs such person's ability to operate the vehicle in a careful and prudent manner. The term "drug" used in this section shall mean any controlled substance as defined and enumerated on schedules I through IV of chapter 329.
>
> . . . .
>
> (c) Habitually driving under the influence of intoxicating liquor or drugs is a class C felony. In addition to any other penalty imposed, a person convicted under this section shall be sentenced to:
>
> (1) Revocation of driver's license for not less than one year; and
>
> (2) Not less than ten days imprisonment of which at least forty-eight hours shall be served consecutively.
>
> . . . .
>
> (d) Whenever a court sentences a person pursuant to subsection (c), it also shall require that the offender be referred to a substance abuse counselor who has been certified . . . for an assessment of the offender's alcohol abuse or dependence and the need for appropriate treatment. The counselor shall submit a report with recommendations to the court. The court shall require the offender to obtain appropriate treatment if the counselor's assessment establishes the offender's alcohol abuse or dependence.
>
> All costs for assessment or treatment or both shall be borne by the offender.
>
> (Emphases added).

cense suspended or revoked (Count III), in violation of HRS § 286–132 (Supp.2001).[3] Specifically, Count I alleged that:

On or about the 9th day of August 2001, in the City and County of Honolulu, State of Hawai'i, KYLE EVAN DOMINGUES did operate or assume actual physical control of the operation of any vehicle *while under the influence of intoxicating liquor,* meaning that he was under the influence of intoxicating liquor in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, *and had been convicted three or more times for driving under the influence offenses during a ten-year period, and/or* did operate or assume actual physical control of the operation of any vehicle while with .08 or more grams of alcohol per one hundred milliliters, or cubic centimeters of blood *or .08 or more grams of alcohol per two hundred ten liters of breath,* and had been *convicted three or more times for driving under the influence offenses during a ten year period,* thereby committing the *offense of Habitually Driving Under the Influence of Intoxicating Liquor or Drugs, in violation of Sections 291–4.4(a)(1) and/or 291–4.4(a)(2) of the Hawai'i Revised Statues.*

(Emphases added).

On June 4, 2002, Domingues filed a motion to dismiss the indictment in open court. In relevant part, the motion maintained that, because HRS §§ 291–4.4(a)(1) and (a)(2) had been repealed prior to the indictment date, Domingues should not be charged thereunder. On June 4, 2002, the circuit court granted the motion and on June 21, 2002, entered an order dismissing the indictment without prejudice. On June 26, 2002, the prosecution filed a motion for reconsideration and the circuit court denied the motion that same day. On July 12, 2002, the prosecution filed a timely notice of appeal.

## II. *STANDARDS OF REVIEW*

### A. *Sufficiency Of A Charge*

■ " 'Whether an indictment [or complaint] sets forth all the essential elements of [a charged] offense ... is a question of law,' which we review under the *de novo,* or 'right/ wrong,' standard." *State v. Cordeiro,* 99 Hawai'i 390, 403, 56 P.3d 692, 705 (2002) (quoting *State v. Merino,* 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) (quoting *State v. Wells,* 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995) (citations omitted))).

### B. *Statutory Interpretation*

■ "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994). . . .

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phras-

---

3. The circuit court did not specifically rule as to Counts II and III, but apparently dismissed the indictment in its entirety. Inasmuch as the mo-

tion to dismiss referred only to Count I, we vacate the circuit court's June 21, 2002 order insofar as it pertains to Count II and III.

es, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray*, 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Kaua*, 102 Hawai'i 1, 7–8, 72 P.3d 473, 479–480 (2003) (quoting *State v. Rauch*, 94 Hawai'i 315, 322–23, 13 P.3d 324, 331–32 (2000) (quoting *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit*, 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker*, 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich*, 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan*, 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))).

4. In examining HRS § 291E–61, we review only those parts of the statute raised on appeal.

5. HRS § 291–4, entitled "Driving Under the Influence of Intoxicating Liquor" was amended by Act 189 and, as amended, was in effect from September 30, 2000 through December 31, 2001. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41 at 433. Act 189 amended HRS § 291–4 by increasing the amount of community service hours required for those convicted of more than one offense of driving under the influence within five years. *See* 2000 Haw. Sess. L. Act 189, Part II, § 22 at 404.

HRS § 291–4.4, entitled "Habitually Driving Under the Influence of Intoxicating Liquor or Drugs," was amended by Act 189 and was in effect as amended from September 30, 2000 through December 31, 2001. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41 at 433. Act 189 amended HRS § 291–4.4 to include sentencing

## III. DISCUSSION

### A. HRS § 291E–61 Is A "Substantial Reenactment" Of HRS § 291–4.4.

■ The prosecution argues that prosecuting Domingues "under the repealed statute was permissible[,] as the new statute no[t] only encompasses the same conduct as the repealed statute[,] but also imposes the same punishment upon conviction." We agree.

HRS §§ 291–4.4(a)(1) and (a)(2) were in effect on the date that Domingues allegedly committed the offense; however, those statutes were no longer in effect on the date of his indictment. Effective January 1, 2002, the legislature repealed HRS § 291–4.4 and enacted HRS §§ 291E–61(a) and (b)(4).[4] *See* 2000 Haw. Sess. L. Act 189,[5] §§ 21–22 at 404.

In *Queen v. Ah Hum*, 9 Haw. 97, 98 (1893), the Supreme Court of the Republic of Hawai'i stated that "the repeal of a penal statute operates as a remission of all penalties for violation of it committed before its repeal, and a release from prosecution therefor after said repeal unless there be either a clause in the repealing statute, or a provision of some other statute, expressly authorizing such prosecution." As such, "all prosecutions under the repealed [a]ct should thereafter" cease, unless the legislature has included a general savings clause or a statute provides otherwise. *Id.*

In the present matter, the prosecution concedes that Act 189 did not include a savings clause and that HRS § 1–11 (1993),[6] "the

provisions, requiring, *inter alia*, the revocation of an offender's driver's license for a minimum of one year, a minimum imprisonment of ten days, and referral to a substance abuse counselor. *See* 2000 Haw. Sess. Laws Act 189, Part II, § 21 at 405.

Thus, on August 9, 2001, the date Domingues allegedly committed the crime charged, HRS § 291–4 and HRS § 291–4.4, as amended by Act 189, were in effect.

Effective January 1, 2002, Act 189 repealed HRS § 291–4 and HRS § 291–4.4 and, simultaneously, HRS § 291E–61, entitled "Operating a Vehicle Under the Influence of an Intoxicant," became effective. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41 at 433.

6. HRS § 1–11 provides that "[n]o suit or prosecution pending at the time of the repeal of any law, for any offense committed, or for the recovery of any penalty or forfeiture incurred under

general savings clause for criminal statutes[,] did not apply in this case[,] as the case was pending investigation, not prosecution[,] after the repeal of HRS § 291-4.4...."

Domingues, quoting the California Supreme Court in *In re Dapper,* 71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d 905, 907 (1969), argues that "[t]he law is well-established that the outright repeal of a criminal statute without a savings clause bars prosecution for violations of the statute committed before the repeal." (Internal quotation marks omitted). To explain the rationale of the foregoing rule, the California Supreme Court stated:

> It is based on presumed legislative intent, it being presumed that the repeal was intended as an implied legislative pardon for past acts. This rule results, of course, in permitting a person who has admittedly committed a crime to go free, it being assumed that the Legislature, by repealing the law making the act a crime, did not desire anyone in the future whose conviction had not been reduced to final judgment to be punished under it. But this rule only applied in its full force where there is an outright repeal, and where there is no other new or old law under which the offender may be punished.

*Sekt v. Justice's Court of San Rafael,* 26 Cal.2d 297, 159 P.2d 17, 21 (1945) (citations omitted).

By contrast, the prosecution cites *In re Dapper* for the proposition that it is not barred from proceeding with the case against Domingues where the repealed law has been substantially reenacted:

> It is established that the *rule which bars prosecution under a repealed law for offenses occurring before repeal does not apply where there is an outright repeal and a substantial reenactment,* because it will be presumed that the legislative body did not intend that there should be a remission of crimes not reduced to final judgment. When a statute, although new in form, re-enacts an older statute without substantial change, even though it repeals the older statute, the new statute is but a continuation of the old. *There is no break*

the law so repealed, shall be affected by such

> *in the continuous operation of the old statute, and no abatement of any of the legal consequences of acts done under the old statute. Especially does this rule apply to the consolidation, revision, or codification of statutes,* because obviously, in such event the intent of the Legislature is to secure clarification, a new arrangement of clauses, and to delete superseded provisions, and not to affect the continuous operation of the law.

71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d at 908 (emphases added) (citations and internal quotation marks omitted); *cf. State v. Levi,* 102 Hawai'i 282, 287, 75 P.3d 1173, 1178 (2003) (explaining that "a change to the law, such as a repeal, has no bearing on previous applications of the prior law absent legislative expression to the contrary").

*In re Dapper* held a defendant's convictions under certain sections of the San Diego municipal code invalid because the old sections had been repealed and *not* substantially reenacted by any provisions in the new code. In applying its ruling, the California Supreme Court examined each section of the municipal code under which the defendant had been charged. It affirmed those convictions charged under the sections of the repealed code that had been substantially reenacted and reversed the convictions charged under sections that had not been substantially reenacted. 71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d at 909–10.

On August 9, 2001, the date that Domingues allegedly committed the offense, HRS § 291-4.4 was in effect. *See supra* note 2; *see also* 2000 Haw. Sess. L., Act 189 at 405–406. HRS §§ 291E–61(a) and 291E–61(b)(4) were in effect on the date of the indictment, March 21, 2002. *See supra* note 1.

The legislature's intent in enacting Act 189 was to consolidate Hawai'i's impaired driving statutes. The legislature explained that Act 189 "consolidates the various statutes relating to operating a vehicle while under the influence of intoxicants, and makes these provisions more uniform and consistent." Hse. Stand. Comm. Rep. No. 70–00, in 2000

repeal."

House Journal, at 974. The legislature also declared that HRS chapter 291E "consolidates, into a new chapter within the HRS, all provisions relating to impaired (alcohol or drugs) driving or boating.... This offense also includes the present class C felony habitual DUI (section 291-4.4)." Sen. Stand. Comm. Rep. No. 3347, in 2000 Senate Journal, at 1399-1401. HRS § 291E-61 was already in effect at the time HRS § 291-4.4 was repealed. Furthermore, in the original enactment of HRS chapter 291E, the act stated that "[i]f any provision of this Act, or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable." 2000 Haw. Sess. L., Act 189, at 433.

"Substantially" means "[e]ssentially; without material qualification; in the main; in substance; materially; in a substantial manner." *Black's Law Dictionary* 1428-29 (6th ed. 1990) To "re-enact" means "[t]o enact again; to revive." *Id.* at 1280. Thus, a statute is "substantially reenacted" when the legislature revives a statute in essentially the same terms, form, or substance as the previous statute, with only minor changes that do

not alter its essential substantive content. *See Natatorium Preservation Comm. v. Edelstein*, 55 Haw. 55, 61, 515 P.2d 621, 625 (1973) (explaining that the latter provisions of the statute were "substantially reenacted" and "any and all variation being only in provisions as to the form in which legislative approval or disapproval might be expressed"); *see also State Farm Mut. Auto Ins. Co. v. Murata*, 88 Hawai'i 284, 285, 965 P.2d 1284, 1285 (1998) (noting that "HRS § 294-36 was reenacted in substantially the same form" as the previous statute, HRS § 431:10C-315).

By their plain language, the relevant provisions of HRS § 291E-61 "re-enact" the definition of the offense contained in HRS § 291-4.4 "without substantial changes."[7] The offense with which Domingues was charged, HRS § 291-4.4, is substantially re-enacted in HRS § 291E-61. As such, Domingues may be prosecuted under HRS § 291-4.4, as there is no evidence that "the legislative body 'did not intend that there should be a remission of crimes not reduced to final judgment.'" *In re Dapper*, 454 P.2d at 908 (quoting *Sekt* 159 P.2d at 22).

Furthermore, we observe, that HRS § 291-4.4(a)(1) described the offense of ha-

---

7. Domingues argues that: (1) HRS § 291E-61(b) divests the sentencing court of its discretion to impose probation or suspend part or all of the sentences by mandating that the offender's sentence must be "without [the] possibility of probation or suspension of sentence," [HRS § 291E-61(b)]; (2) HRS §§ 291E-61(c) and 291E-4(a) add a conviction under HRS § 200-81 (Supp. 1996) to the Hawai'i offenses that qualify for sentencing as a "habitual" DUI offender; (3) HRS § 291E-61 defines any conviction obtained in "any other state or federal jurisdiction for an offense that is *comparable* to operating or being in physical control ... while under the influence of an intoxicant" and thus, "it is much broader than that which had been defined in HRS § 291-4.4" (emphasis added); (4) HRS § 291E-61 converts what had been an element of the offense under HRS § 291-4.4, *i.e.*, that the accused had been convicted three or more times of having committed the requisite prior offenses, into a sentencing factor, *see* HRS § 291E-61(b); (5) HRS § 291E-61 adds restitution to the police for the cost of any blood or urine testing as part of the sentence; and (6) HRS § 291E-61(b)(4) prescribes additional incarceration and an additional five hundred dollar fine if a minor was in the vehicle at the time of the crime. The prosecution

does not respond to the foregoing arguments in its reply brief.

As to Domingues's first point, we need not decide the exact parameters of the prohibition against probation or suspension of sentence as pertaining to the conviction of a class C felony or the ten-day prison sentence. The prosecution argues that "there are no statutory provisions that allow suspension of sentence for felony convictions ([HRS § ] 706-605 (1998))[.]" It is important to note that Act 314 of the 1986 Hawai'i Session Laws deleted suspension of sentence as a sentencing alternative, and this court has interpreted the deletion to mean that "suspension of sentence" is no longer a sentencing alternative unless explicitly allowed. *See State v. Scott*, 69 Haw. 458, 459 n. 3, 746 P.2d 976, 977 n. 3 (1987). The prosecution argues that because HRS § 291-4.4 required "mandatory jail time which is contrary to probation (H.R.S. Section 706-605 (1993))[,]" prohibition of probation was implied in HRS § 291-4.4.

As indicated, *infra*, we do not agree that Domingues's fourth point should result in invalidating the statute. Inasmuch as he has not been convicted, Domingues's other points are raised prematurely.

bitually driving under the influence (DUI) of intoxicating liquor or drugs as having been convicted, three or more times in a ten-year period, of a driving under the influence offense and of actual physical control or the operation of any vehicle "while under the influence of an intoxicating liquor." Under HRS § 291–4.4(a)(1), this means "the person is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty." In the alternative, this element may be established by the appointed blood alcohol level or requisite "drug" influence. *See* HRS § 291–4.4(a)(2) and (3), respectively, *supra* note 2.

In HRS § 291–4.4(a), the operative words describing the offense of habitual DUI, to wit, that "during a ten-year period the person has been convicted three or more times for a driving under the influence offense[,]" define an element of the offense. These words, however, are omitted from the offense of operating a vehicle under the influence of an intoxicant as described in HRS § 291E–61. Rather, in HRS § 291E–61(b), the determination of whether a person has been convicted three or more times for driving under the influence is incorporated into its sentencing provisions. Specifically, HRS § 291E–61(b)(4) states that "a person committing the offense of [DUI] shall be *sentenced*" to the sanctions prescribed "[f]or an offense that occurs within ten years of three or more prior conviction for offenses under this section, section 707–702.5, or section 291E–4(a)[.]" (Emphasis added.) Accordingly, Domingues argues that the offense described in HRS § 291–4.4 was not substantially reenacted because HRS § 291E–61 converts what had been an element of the offense under HRS § 291–4.4, *i.e.*, that the accused had been convicted three or more times of having committed the requisite prior offenses, into a sentencing factor that the prosecution need neither allege in the charg-

ing instrument nor prove beyond a reasonable doubt at trial. Domingues is mistaken.

It is fundamental that, as a matter of basic due process, "[a] defendant must be put on sufficient notice of the 'nature and cause of the accusation' with which he is charged." *State v. Lemalu,* 72 Haw. 130, 134, 809 P.2d 442, 444 (1991) (quoting *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1245 (1977)) (internal quotation signals omitted). On its face, the degree of punishment for a violation of HRS § 291E–61(a) escalates as a function of whether the violation constitutes: (1) a "first offense, or any offense not preceded within a five-year period by a [prior and like] conviction," HRS § 291E–61(b)(1); (2) "an offense that occurs within five years of a prior [and like] conviction," HRS § 291E–61(b)(2); (3) "an offense that occurs within five years of two prior [and like] convictions," HRS § 291E–61(b)(3); or, as in the present case, "an offense that occurs within ten years of three or more prior [and like] convictions," HRS § 291E–61(b)(4). *See supra* note 1.[8] In other words, the foregoing prefatory language of HRS § 291E–61(b)(1) ' through 291E–61(b)(4) describes attendant circumstances, *see* HRS 702–205 (1993), that are intrinsic to and "enmeshed" in the hierarchy of offenses that HRS § 291E–61 as a whole describes.

Under analogous circumstances, this court has unanimously ruled that

if the "aggravating circumstances" justifying the imposition of an enhanced sentence are "enmeshed in," or, put differently, *intrinsic* to the "commission of the crime charged," then, in accordance with the [*State v.*] *Estrada* [, 69 Haw. 204, 738 P.2d 812 (1987) ] rule, such aggravating circumstances "*must* be alleged in the [charging instrument] in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to

8. Indeed, "[a]n offense under [HRS § 291–61(b)(4) ] is a class C felony," *see supra* note 1, entitling a defendant to a jury trial, whereas the offenses described in HRS §§ 291E–61(b)(1) through 291E–61(b)(3) would appear to be petty misdemeanors, as to which no right to a jury trial would attach. *See id.* If the prefatory language of HRS §§ 291E–61(b)(1) through 291E–

61(b)(4) were mere "sentencing factors" that the prosecution was not obliged to allege and prove to the trier of fact, as Domingues suggests, then defendants charged with HRS § 291E–61 offenses would have no idea what the particular offense was that they were charged with committing or whether they were entitled to a jury trial.

be imposed, and they must be determined by the trier of fact."

*State v. Schroeder,* 76 Hawai'i 517, 528, 880 P.2d 192, 203 (1994)....

....

... *[I]t is an impermissible dilution of the jury's role as factfinder to remove the responsibility for determining the existence of facts leading to the imposition of a particular punishment.* ... We hold that when a fact susceptible to jury determination is a predicate to the imposition of an enhanced sentence, the Hawai'i Constitution requires that such factual determinations be made by the trier of fact. *The legislature may not dilute the historical province of the jury by relegating facts necessary to the imposition of a certain penalty for criminal behavior to the sentencing court. The jury is the body responsible for determination of intrinsic facts necessary for the imposition of punishment for an offense criminalized by the legislature.* The analysis in *Schroeder* protects the jury's role by mandating that the determination of facts intrinsic to the offense be made by the trier of fact.

*State v. Tafoya,* 91 Hawai'i 261, 270, 273, 982 P.2d 890, 899, 902 (1999) (footnote omitted) (some emphasis added and some in original) (Some brackets added and some in original) (quotation signals in original).

HRS § 291E–61, then, does require that the prosecution prove that "during a ten-year period the person has been convicted three or more times for a driving under the influence offense[.]" Inasmuch as the prosecution is still required to prove that the three prior convictions occurred, the offense of habitual DUI, HRS § 291–4.4, is substantially reenacted in HRS § 291E–61(b)(4).

B. *Charging Domingues Under The Repealed Statute Was Not Inconsistent With The Ex Post Facto Rule.*

 The prosecution contends that the indictment charged Domingues under the statute that was in effect at the time of his arrest, and that, therefore, it did not violate the *ex post facto* rule.[9] Moreover, Domingues concedes that "this case does not present an *ex post facto* problem" and that "an *ex post facto* problem would have arisen in this case had the prosecution charged Domingues under HRS § 291E–61 (Supp. 2001), which was not in effect on the date of the alleged offense." Consequently, inasmuch as Domingues was properly charged under HRS § 291–4.4 and we hold that the prosecution may proceed under the charged statute, no *ex post facto* problem arises.[10]

IV. *CONCLUSION*

In light of the foregoing analysis, we vacate the circuit court's June 21, 2002 order dismissing the indictment without prejudice and remand the present matter for further proceedings.

Dissenting Opinion by ACOBA, J., with whom NAKAYAMA, J., Joins.

In my view, (1) because Hawai'i Revised Statutes (HRS) § 291–4.4 (Supp.2000) pertaining to the offense of "Habitually Driving Under the Influence of Intoxicating Liquor or Drugs" (Habitual DUI) was repealed, any Habitual DUI offense not pending prosecution at the time of repeal may not be prosecuted under HRS § 291–4.4, in the absence of a statutory savings clause; (2) assuming *arguendo* that the rule which bars prosecution as aforesaid does not apply if a new statute is a substantial re-enactment of the repealed statute, the new statute entitled "Operating a Vehicle Under the Influence of an Intoxicant" (OUI), HRS § 291E–61 (Supp. 2000), did not substantially re-enact HRS § 291–4.4; (3) in holding that the new statute must be infused with due process requirements that will render it substantially similar to the repealed statute, the majority distorts

9. "The *ex post facto* clause prohibits ... the states from enacting any law that imposes a punishment for an act which is not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *United States v. Snowden,* 677 F.Supp. 1108, 1110 (Kan. 1988).

10. Based on our decision discussed above, we need not reach the other points raised by the prosecution.

the rule of substantial *re-enactment*. In light of these propositions, the circuit court of the first circuit (the court) ruled correctly in dismissing without prejudice the indictment brought against Defendant–Appellant Kyle Evan Domingues (Defendant) by Plaintiff–Appellee State of Hawai'i (the prosecution). Therefore, I would hold that the court's June 21, 2002 order to that effect should be affirmed with respect to Count I.

## I.

On March 21, 2002, the prosecution filed a three-count indictment charging Defendant, in Count I, with a violation of HRS § 291–4.4:

On or about the 9th day of August 2001, in the City and County of Honolulu, State of Hawai'i, [Defendant] did operate or assume actual physical control of the operation of any vehicle *while under the influence of intoxicating liquor*, meaning that he was under the influence of intoxicating liquor in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, *and had been convicted three or more times for driving under the influence offenses during a ten-year period, and/or* did operate or assume actual physical control of the operation of any vehicle while with .08 or more grams of alcohol per one hundred milliliters, or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath, and had *been convicted three or more times for driving under the influence offenses during a ten year period*, thereby committing the *offense of Habitually Driving Under the Influence of Intoxicating Liquor or Drugs, in violation of Sections 291–4.4(a)(1)[¹] and/or 291–4.4(a)(2)[²] of the [HRS]*.

(Emphases added.)

On June 4, 2002, Defendant filed in open court a "Motion to Dismiss Indictment." Effective January 1, 2002, the legislature had

1. *See infra.*

2. *See infra.*

repealed HRS § 291–4.4 and enacted HRS §§ 291E–61(a) and 291E–61(b)(4). In relevant part, the motion maintained that because HRS §§ 291–4.4(a)(1) and (a)(2) had been repealed prior to the indictment date, Defendant should not be charged thereunder. The record does not reflect why Defendant was not charged during the almost five-month period between the date of the alleged offense and the date of the repeal of HRS § 291–4.4.

On June 4, 2002, the court granted the motion and on June 21, 2002, the court entered an order dismissing the indictment without prejudice. On June 26, 2002, the prosecution filed a motion for reconsideration. The court denied the prosecution's motion on June 26, 2002.

The prosecution appealed on July 12, 2002. On appeal, the prosecution argues that the court erred in dismissing the indictment inasmuch as: (1) the prosecution properly charged Defendant under the statute that was in effect on the date Defendant committed the offense; (2) the court rejected the prosecution's request for an extension of time to respond to Defendant's motion to dismiss; (3) HRS § 291E–61(a) and HRS § 291E–61(b)(4) substantially re-enacted HRS § 291–4.4(a)(1) and HRS § 291–4.4(a)(2); (4) citation to the repealed statute was consistent with the ex post facto rule; and (5) even assuming, *arguendo*, that HRS § 291–4.4 was incorrectly cited in the indictment, such a mistake was a "formal defect that did not prejudice or mislead [Defendant as] to his prejudice."

## II.

HRS §§ 291–4.4(a)(1) and (a)(2), under which Defendant was charged, were in effect on the date of the alleged offense. However, as indicated previously, those statutes were no longer in effect on the date of the indictment. Rather, HRS §§ 291E–61(a) and 291E–61(b)(4) were in effect.[3] *See* 2000 Haw. Sess. L. Act 189,[4] § 21–22, at 404–05.

3. In examining HRS § 291E–61, only those parts of the statute raised on appeal are discussed.

4. HRS § 291–4 entitled "Driving Under the Influence of Intoxicating Liquor," was amended by

In *Queen v. Ah Hum*, 9 Haw. 97, 98 (1893), the Supreme Court of the Republic of Hawai'i stated that "the repeal of a penal statute operates as a remission of all penalties for violation of it committed before its repeal, *and a release from prosecution therefor after said repeal unless there be either a clause in the repealing statute, or a provision of some other statute, expressly authorizing such prosecution.*"[5] (Emphasis added.) Thus, "[i]n the absence of clear legislative intent to the contrary, repeal means the statute or statutory provision no longer exists." *Kaiser Found. Health Plan, Inc. v. Dep't of Labor & Indus. Relations*, 70 Haw. 72, 83, 762 P.2d 796, 802 (1988); *see also The King v. Yung Hong*, 7 Haw. 359, 363 (1888) ("Statutes which have been repealed (except so far as they relate to transactions already completed under them) become as if they had never existed."). Pursuant to our cases, then, the statutory provisions under which Defendant was charged did not provide a legal basis for indictment.

Where "the repeal of the old statute and the enactment of another was clearly intended and expressly stated, [courts] have no responsibility or authority but to follow and apply the legislative will *as expressed.*" *State of Missouri v. Coor*, 740 S.W.2d 350, 355 (Mo.Ct.App.1987) (emphasis added) (citing 1A *Sutherland Statutory Construction* § 23.07 at 326 (4th ed.1985)). Act 189 clearly stated that "Section 291-4.4, [HRS], is repealed" without qualification. Hence, the legislative will, as expressed, left no doubt that the crime of Habitual DUI no longer existed. This court thus must "apply the legislative will as expressed." *Id.*

## III.

HRS § 1-11 (1993), the general savings clause relevant in the instant case, provides that "[n]o suit or *prosecution pending at the time of the repeal* of any law, for any offense committed, or for the recovery of any penalty or forfeiture incurred under the law so repealed, shall be affected by such repeal." (Emphasis added.) With respect to HRS § 1-11, "[p]rosecution" means "[a] criminal action; a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the guilt or innocence of a person *charged with [a] crime.*" *Black's Law Dictionary* 1221 (6th ed.1990) (emphasis added).

As mentioned previously, HRS § 291-4.4 was repealed on January 1, 2002. Defendant

---

Act 189 and, as amended, was in effect from September 30, 2000 through December 31, 2001. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41, at 433. Act 189 amended HRS § 291-4 by increasing the amount of community service hours required for those convicted of more than one offense of driving under the influence within five years. *See* 2000 Haw. Sess. L. Act 189, Part II, § 22, at 404.

HRS § 291-4.4 entitled, as mentioned, "Habitually Driving Under the Influence of Intoxicating Liquor or Drugs," was amended by Act 189 and, as amended, was in effect from September 30, 2000 through December 31, 2001. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41, at 433. Act 189 amended HRS § 291-4.4 to include sentencing provisions, requiring, *inter alia*, the revocation of an offender's driver's license for a minimum of one year, a minimum imprisonment of ten days, and referral to a substance abuse counselor. *See* 2000 Haw. Sess. L. Act 189, Part II, § 21, at 405.

Thus, on August 9, 2001, the date Defendant allegedly committed the crimes charged, HRS §§ 291-4 and 291-4.4, as amended by Act 189, were in effect.

Effective January 1, 2002, Act 189 repealed HRS §§ 291-4 and 291-4.4 and simultaneously HRS § 291E-61, entitled "Operating a Vehicle Under the Influence of an Intoxicant" became effective. *See* 2000 Haw. Sess. L. Act 189, Part IV, § 41, at 433.

5. In *Ah Hum*, the defendant had been charged with conducting a lottery, in violation of Section 3, Chapter 41, Laws of 1886 in "Police Court." 9 Haw. at 97. He moved to dismiss and appealed to the circuit court. While the motion was before the circuit court, the Act of 1866 under which the defendant had been convicted was repealed. A savings clause in "Section 12" of "Act 21," the repealing statute, read, "No suit or prosecution pending for any offense committed or for the recovery of any penalty or forfeiture incurred under any law heretofore enacted shall in any case be affected by the passage of this Act." *Id.* at 98. The court also considered a general statute, "Section 23 of the Civil Code," which said, "[N]o ... prosecution pending at the time of the repeal of any law ... shall in any case be affected by such repeal." *Id.* The *Ah Hum* court concluded that "[t]hese statutes mean that no prosecution for any offense committed in violation of the law then in force, which prosecution was pending when the law was repealed shall be affected by the repeal." *Id.* at 99.

was indicted on March 21, 2002 pursuant to HRS § 291–4.4, *after* HRS § 291–4.4 was repealed. Because Defendant had not been subjected to prosecution prior to the repeal, Defendant did not come within the general savings statute of HRS § 1–11. Also, no specific savings clause was enacted for HRS § 291–4.4 violations preceding the repeal of that statute.

The prosecution concedes that Act 189 did not include a specific savings clause, and that HRS § 1–11, "the general savings clause for criminal statutes[,] did not apply in this case as the case was pending investigation, not prosecution after the repeal of HRS § 291–4.4[.]" Unless a general savings clause is applicable or the legislature has enacted a specific savings clause in some other·statute that provides otherwise, "all prosecutions under the repealed [a]ct should thereafter" cease. *Ah Hum,* 9 Haw. at 98. The prosecution in this case thus was not authorized.

## IV.

### A.

Nevertheless, the prosecution maintains that it is not barred from proceeding with the case against Defendant where there is a "substantial re-enactment" of the repealed law. Assuming *arguendo* that despite prior case law and HRS § 1–11, a substantial re-enactment exception may be applied in our jurisdiction, a comparison of the relevant statutory provisions reveals major dissimilarities rather than substantial similarity, *see* discussion *infra,* between the repealed law and the new statute.

### B.

In support of its position, the prosecution quotes as follows from the California case of *In re Dapper:*

It is established that the *rule which bars prosecution under a repealed law for offenses occurring before repeal does not apply where there is an outright repeal and a substantial reenactment,* because it will be presumed that the legislative body did not intend that there should be a remission of crimes not reduced to final judgment. When a statute, although new in form, re-enacts an older statute *without substantial change,* even though it repeals the older statute, the new statute is but a continuation of the old. *There is no break in the continuous operation of the old statute, and no abatement of any of the legal consequences of acts done under the old statute. Especially does this rule apply to the consolidation, revision, or codification of statutes,* because obviously, in such event the intent of the Legislature is to *secure clarification, a new arrangement of clauses, and to delete superseded provisions, and not to affect the continuous operation of the law.*

*In re Dapper,* 71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d 905, 908 (1969) (emphases added) (citations and internal quotation marks omitted). *In re Dapper* held that a defendant's convictions under certain sections of the Municipal Code of San Diego were invalid because the old sections had been repealed and had not been substantially re-enacted by any provisions in the new code.

In applying its ruling, the California Supreme Court examined each section of the municipal code, individually, under which the defendant had been charged. It upheld ·those convictions charged under the sections of the repealed code that had been substantially reenacted. *Id.* at 909–10. As to these convictions, the court found that those "*sections [were] virtually identical.*"[6] *Id.* at 910 (emphasis added). The California court did not uphold those sections of the code in

---

**6.** The California Supreme court explained that the repealed section stated that, "[i]t shall be unlawful for any person to dump or throw rubbish of any kind upon any lot or tract of land ... except by the written permission of the City Council; and it shall be unlawful ... to place or allow to be placed, or allow to remain on any premises ... such rubbish without the written permission of the City Council." *In re Dapper,* 71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d at 910

n. 4. According to the California court, the new statute similarly read: "No person shall dump or ·throw rubbish of any kind upon any lot or tract of land ... except by the written permission of the City Council; and no occupant or owner of any premises shall place or allow to be placed, or allow to remain on said premises such rubbish without the written permission of the City Council." *Id.*

which "neither the prohibitions nor the purpose" of the section was reenacted. *Id.*[7] Even were the exception of substantial reenactment recognized, *In re Dapper* does not sustain the prosecution's position inasmuch as, as discussed *infra*, the relevant sections in the new statute, HRS § 291E–61, are not "virtually identical to [HRS § 291–4.4,] the repealed statute." *Id.*[8]

## V.

Those sections implicated in the charge brought against Defendant must be examined in deciding whether the court was correct in dismissing the indictment. *See State v. Kalama*, 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000) (providing that the interpretation of a statute is a question of law subject to *de novo* review); *State v. Detroy*, 102 Hawai'i 13, 20, 72 P.3d 485, 492 (2003) (subjecting questions of law to the right/wrong standard

of review). On August 9, 2001, the now repealed statute regarding Habitual DUI, HRS § 291–4.4, provided as follows:

> (a) A person commits the offense of habitually driving under the influence of intoxicating liquor or drugs if, *during a ten-year period the person has been convicted three or more times for a driving under the influence offense;* and
>
> (1) The person operates or assumes actual physical control of the operation of any vehicle *while under the influence of intoxicating liquor,* meaning that the person is under the influence of intoxicating liquor *in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty;*
>
> (2) The person operates or assumes actual physical control of the operation

7. Specifically, the court examined section 55.35, determining that the statute at issue was not substantially reenacted. *Id.* at 909. Section 55.35 "made it unlawful to allow any 'vacant land, yard or premises' to 'be overrun or overgrown with noxious or dangerous weeds.' " *Id.* Section 27.05a, the new statute, states that " '[a]ccumulations of ... weeds ... shall not be permitted to remain ... in any court, yard, vacant lot or open space,' and that '[a]ll weeds ... when same endangers property ... shall be cut down and removed....' " *Id.* (ellipsis points in original). The California court reasoned that "[a]lthough section 27.05a requires that 'weeds' be cut down only when property is endangered, repealed section 55.35 required that 'noxious' weeds be cut down, whether or not the weeds are dangerous. The phrase *'noxious weeds' has a meaning distinct and different from 'weeds ... (which) endanger property.' " Id.* (ellipsis points in original) (emphasis added). The California court also examined the purpose of the provisions of section 27.05a which was "to prevent fires." *Id.* As such, "any 'accumulations' of weeds—that is, cut-down or loose weeds—and other loose items are prohibited, while growing weeds are prohibited only when they endanger property. In contrast, section 55.35 *contained no mention of cut-down weeds, but did prohibit certain types of growing weeds." Id.* (emphasis added).

8. While *In re Dapper* referred to *Seki v. Justice's Court of San Rafael Tp.*, 26 Cal.2d 297, 159 P.2d 17 (1945), that case did not involve an outright repeal of a statute but a 1943 *amendment* to a "section 182" of the California Penal Code. By virtue of the amendment, "the degree of the crime was changed to either a misdemeanor or

felony, dependent upon the punishment imposed, and became triable in the superior court [rather than the 'justices court'] upon the filing of an indictment or information [as opposed to a 'complaint']." *Id.* at 19. The California court noted that "[b]y the 1943 amendment the Legislature in no way changed the constituent elements of the crime of conspiracy, but it did change the maximum punishment[.]" *Id.* at 18. The defendant appealed on the ground that he had been charged by complaint with a misdemeanor under the old statute and "that the 1943 amendment to section 182 changing the grade of the offense operated as a repeal of the section as it read prior to the amendment; ... that as a result the [lower] court has no power to carry into effect or enforce its judgment." *Id.* at 19.

The California court rejected the appeal on the ground "that included within the word 'information' are all misdemeanor prosecutions." *Id.* at 21. However, it went on to support the same conclusion on another ground, that is, "that the amendment of section 182 of the Penal Code was not of a repeal of the type to bring into operation the common-law rule that the repeal of a criminal statute, without a saving clause, operates to terminate all pending prosecutions." *Id.* In so doing, it was concerned with "the exact situation here present [sic] the legal effect of an amendatory act increasing the punishment[,]" *id.* at 23, on which it acknowledged "there is a conflict of authority[,]" *id.* In concluding "that the old law should apply to offenses committed before the effective date of the amendment[,]" *id.*, the court noted that "[t]he constituent elements of the crime have never been changed[,]" *id.*, a situation that indisputably is not the case here. *See* discussion *infra*.

of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood *or .08 or more grams of alcohol per two hundred ten liters of breath;* or

(3) A person operates or assumes actual physical control of the operation of any vehicle while under the influence of any drug which impairs such person's ability to operate the vehicle in a careful and prudent manner. The term "drug" used in this section shall mean any controlled substance as defined and enumerated on schedules I through IV of chapter 329.

(b) For the purposes of this section, *a driving under the influence offense means a violation of this section or section 291–4, 291–7, or 707–702.5, or violation of laws in another jurisdiction that requires proof of each element of the offenses punishable under either this section or section 291–4, 291–7, or 707–702.5* if committed in Hawai'i.

(c) *Habitually driving under the influence of intoxicating liquor or drugs is a class C felony. In addition to any other penalty imposed,* a person convicted under this section *shall be sentenced to:*

(1) *Revocation of driver's license for not less than one year;* and

(2) *Not less than ten days imprisonment of which at least forty-eight hours shall be served consecutively.* No license suspension or revocation shall be imposed pursuant to this subsection if the person's license has previously been administratively revoked pursuant to part XIV of chapter 286 for the same act; provided that, if the administrative revocation is subsequently reversed, the person's license shall be suspended or revoked as provided in this subsection.

(d) *Whenever a court sentences a person pursuant to subsection (c), it also shall require that the offender be referred to a substance abuse counselor* who has been certified pursuant to section 321–193 for an assessment of the offender's alcohol abuse or dependence and the need for appropriate treatment. The counselor shall submit a report with recommendations to the court. The court shall require the offender to obtain appropriate treatment if the counselor's assessment establishes the offender's alcohol abuse or dependence.

*All costs for assessment or treatment or both shall be borne by the offender.*

(Emphases added.); *see also* 2000 Haw. Sess. L., Act 189 § 21, at 405–06.

HRS §§ 291E–61(a) and (b)(4) were in effect on the date of the indictment. HRS § 291E–61 in pertinent part read as follows:

(a) *A person commits the offense of operating a vehicle under the influence of an intoxicant* if the person operates or assumes actual physical control of a vehicle:

(1) While *under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties* or ability to care for the person and guard against casualty;

(2) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;

(3) *With .08 or more grams of alcohol per one hundred ten liters of breath;* or

(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

(b) A person committing the offense of operating a vehicle under the influence of an intoxicant *shall be sentenced* as follows without possibility of probation or suspension of sentence:

. . . .

(4) For an *offense that occurs within ten years of three or more prior convictions for offenses under this section, section 707–702.5, or section 291E–4(a):*

(A) *Mandatory revocation of license* and privilege to operate a vehicle for a period *not less than one year* but not more than five years;

(B) *Not less than ten days imprisonment, of which at least forty-eight*

*hours shall be served consecutively; and*

(C) Referral *to a substance abuse counselor as provided in section (d);*

. . . .

An offense under this paragraph is a class C felony.

(c) Notwithstanding any other law to the contrary, any:

(1) *Conviction under this section or section 291E–4(a); or*

(2) *Conviction in any other state or federal jurisdiction for an offense that is comparable* to operating or being in physical control of a vehicle while having either an unlawful alcohol concentration or an unlawful drug content in the blood or urine or while under the influence of an intoxicant; *shall be considered a prior conviction* for the purposes of imposing sentence under this section. No license and privilege suspension or revocation shall be imposed pursuant to this section if the person's license and privilege to operate a vehicle has previously been administratively revoked pursuant to part III for the same act; provided that, if the administrative suspension or revocation is subsequently reversed, the person's license and privilege to operate a vehicle shall be suspended or revoked as provided in this section.

(d) Whenever a court sentences a person pursuant to subsection (b), it also shall require that the offender be *referred to the driver's education program for an assessment, by a certified substance abuse counselor,* of the offender's substance abuse or dependence and the need for appropriate treatment. The counselor shall submit a report with recommendations to the court. The court shall require the offender to obtain appropriate treatment if the counselor's assessment establishes the offender's substance abuse or dependence. *All*

*costs for assessment and treatment shall be borne by the offender.*

(Emphases added.)

## VI.

A comparison of HRS §§ 291–4.4 and 291E–61 manifestly demonstrates that this case does not fall within the substantial re-enactment exception (assuming *arguendo* it applies) to the general rule against prosecution of offenses occurring before repeal of the statute violated. The term "substantially" means "[e]ssentially; without material qualification; in the main; in substance; materially; in a substantial manner." *Black's Law Dictionary* at 1428–29. To "re-enact" means "[t]o enact again; to revive." *Id.* at 1280. Hence, a statute is "substantially re-enacted" when the legislature revives a statute in substantially the same terms, form, or substance as the previous statute, with only minor changes which do not alter its essential substantive content.

In *Natatorium Preservation Comm. v. Edelstein,* 55 Haw. 55, 515 P.2d 621 (1973), the plaintiffs sought to enjoin the defendants from demolishing the Waikiki War Memorial Natatorium. *Id.* at 55, 515 P.2d at 622. Plaintiffs sued for an injunction because the governor had not formally withdrawn the lands that had been set aside for the Natatorium and the legislature did not have the opportunity to express disapproval to the withdrawal of the public lands pursuant to the disputed statutory provisions. *Id.* at 57, 515 P.2d at 623. This court was persuaded to enjoin such demolition because the applicable statutory provisions were "substantially re-enacted" with *"any and all variation being only in provisions as to the form* in which legislative approval or disapproval might be expressed" for the setting aside of the disputed lands for a public purpose. *Id.* at 60–61, 515 P.2d at 625 (emphasis added).

Similarly, in *State Farm Mut. Auto Ins. Co. v. Murata,* 88 Hawai'i 284, 285, 965 P.2d 1284, 1285 (1998), this court noted that "HRS § 294–36 was reenacted in substantially the same form" as the previous statute, HRS § 431:10C–315. A comparison of these two statutes shows only minor grammatical changes, with the statutes employing virtual-

ly the same language. *See Ah Hum*, 9 Haw. at 100 ("Where the method of procedure under the repealed law is changed by the new law, different questions arise which need not be considered here, as the procedure under the Act of 1886 [the repealed statute] is not altered by 'Act 21' [the new statute]."); *In re Dapper*, 77 Cal.Rptr. 897, 454 P.2d at 910 (upholding a conviction where the repealed section of a municipal code was "virtually identical" and hence "substantially reenacted" by a subsequent section).

## VII.

On their faces, the relevant provisions of HRS § 291E–61 do not "re-enact" HRS § 291–4.4 "without substantial changes,"[9] *In re Dapper*, 71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d at 908, *but in effect create a new offense.* These changes, as discussed *infra*, do not "secure clarification," effectuate "a new arrangement of clauses," or "delete superseded provisions," *id.*, so as to justify application of the substantial reenactment exception. Rather, the modifications significantly disrupt "the continuous operation of the [repealed] law." *Id.* But such "continuous operation" is the rationalization which

allows charges to be brought under the repealed statute even after repeal.

## VIII.

### A.

In this regard, I observe, initially, that HRS § 291–4.4(a)(1) described the offense of Habitual DUI as having been convicted, three or more times in a ten-year period, of a driving under the influence offense and actual physical control or the operation of any vehicle "while under the influence of an intoxicating liquor." Under HRS § 291–4.4(a)(1) this means "the person is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty." In the alternative, this element may be established by the prescribed blood alcohol level or requisite "drug" influence. *See* HRS §§ 291–4.4(a)(2) and (3), respectively, *supra.*

In HRS § 291–4.4(a), the operative words describing the repealed offense of Habitual DUI, that is, that "during a ten-year period the person has been convicted three or more times for a driving under the influence offense[,]" define an element of the offense.

---

9. Defendant's position is that (1) HRS § 291E–61(b) divests the sentencing court of its discretion to impose probation or to suspend part or all of the sentences by mandating that the offender's sentence must be "without [the] possibility of probation or suspension of sentence"; (2) HRS §§ 291E–61(c) and 291E–4(a) add a conviction under HRS § 200–81 (Supp.1996) to the Hawai'i offenses that qualify for sentencing as a "habitual" OUI offender; (3) HRS § 291E–61 defines any conviction obtained in "any other state or federal jurisdiction for an offense that is *comparable* to operating or being in physical control ... while under the influence of an intoxicant," and, thus, "it is much broader than that which had been defined in HRS § 291–4.4"; (emphasis added); (4) HRS § 291E–61 converts what had been an element of the offense under HRS § 291–4.4, *i.e.*, that the accused had been convicted three or more times of having committed the requisite prior offenses, into a sentencing factor, *see* HRS § 291E–61(b); (5) HRS § 291E–61 adds restitution to the police for any blood or urine testing as part of the sentence; and (6) HRS § 291E–61(b)(4) prescribes additional incarceration and an additional five hundred dollar fine if a minor was in the vehicle at the time of the crime. In its reply brief, the prosecution does not respond to the foregoing arguments.

As to Defendant's first point, the exact parameters of the prohibition against probation or suspension of sentence as pertaining to the conviction of a class C felony or the ten-day prison sentence need not be decided. The prosecution argues that "there are no statutory provisions that allow suspension of sentence for felony convictions ([HRS § ] 706–605 (1998))[.]" It is important to note that Act 314, 1986 Session Laws of Hawai'i, deleted suspension of sentence as a sentencing alternative. *See* 1986 Haw. Sess. L. Act 314 § 14, at 599. HRS § 706–605(1) (1985) read in relevant part, "Except as provided in section 706–606 and subject to the applicable provision of this Code, the court may suspend the imposition of sentence on a person who has been convicted of a crime[.]" This court has interpreted the deletion to mean that "suspension of sentence" is no longer a sentencing alternative unless explicitly allowed. *See State v. Scott*, 69 Haw. 458, 459 n. 3, 746 P.2d 976, 977 n. 3 (1987). The prosecution argues that because HRS § 291–4.4 required "mandatory jail time which is contrary to probation (HRS Section 706–605 (1993))[,]" prohibition of probation was implied in HRS § 291–4.4.

These words, however, are omitted from the new offense of OUI as described in HRS § 291E–61. Rather, in HRS § 291E–61(b), the determination of whether a person has been convicted three or more times for driving under the influence is incorporated into the sentencing provisions of the new statute.

Specifically, HRS § 291E–61(b)(4) states that "a person committing the offense of [OUI] ... shall be *sentenced* " to the sanctions prescribed "[f]or an offense that occurs within ten years of three or more prior convictions for offenses under this section, section 707–702.5, or section 291E–4(a)[.]" (Emphasis added.) Therefore, HRS § 291E–61 does not require that the prosecution prove as an element of the crime that "during a ten-year period the person has been convicted three or more times for a driving under the influence offense[.]" HRS § 291–4.4(a). As Defendant argues, HRS § 291E–61 converts what had been an element of the offense under HRS § 291–4.4, *i.e.,* that the accused had been convicted three or more times of having committed the requisite prior offenses, into a sentencing factor under the new statute.

The legislature's deletion of the requirement in HRS § 291–4.4(a) that the prosecution prove beyond a reasonable doubt at trial that "during a ten-year period the person has been convicted three or more times for a driving under the influence offense" significantly alters the definition of the offense. The newly adopted definition of the habitual offense then, cannot be said to be "but a continuation of the old" statute. *In re Dapper,* 71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d at 908. Undeniably, "the continuous operation of the [repealed] law," *id.,* is disrupted inas-

much as it creates a new offense, eliminating proof of the fundamental element previously required for conviction of Habitual DUI. HRS § 291E–61, therefore, does not substantially reenact HRS § 291–4.4.

### B.

That the legislature intended that the three prior conviction condition in HRS § 291E–61 refer to a sentencing factor rather than an element of an offense is substantiated by subsequent legislative history. The offense of Habitual DUI, codified in HRS § 291–4.4, was effective between September 30, 2000 and December 31, 2001. *See* 2000 Haw. Sess. L. Act 189, §§ 21, 32, 41, at 405, 432–33. That offense required proof beyond a reasonable doubt of the element of three prior convictions. HRS § 291–4.4. As mentioned before, the offense of OUI, codified as HRS § 291E–61, took effect on January 1, 2002. *See* 2000 Haw. Sess. L. Act 189, §§ 23, 41, at 425, 433. On the face of subsection (b)(4) of this statute, the fact of three prior convictions was designated a sentencing factor.

In 2003, however, the legislature passed Act 71, amending HRS § 291E–61 by entirely omitting subsection (b)(4). *See* 2003 Haw. Sess. L. Act 71, § 3, at 125–26. Act 71 became effective on January 1, 2004. *See* 2003 Haw. Sess. L. Act 71 § 7, at 127. But, Act 71 also amended HRS § 291E–61 by adding a new section, now codified as § 291E–61.5, entitled "[h]abitually operating a vehicle under the influence of an intoxicant" (Habitual OUI).[10] *See* 2003 Haw. Sess. L. Act 71, § 1, at 123.

---

**10.** HRS § 291E–61.5 (Supp.2004) provides as follows:

**Habitually operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:

(1) The person is a *habitual operator of a vehicle while under the influence of an intoxicant;* and

(2) The person operates or assumes actual physical control of a vehicle:

(A) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

(B) While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner;

(C) With .08 or more grams of alcohol per two hundred ten liters of breath; or

(D) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

(b) For the purposes of this section:

*"Convicted three or more times for offenses of operating a vehicle under the influence" means that, at the time of the behavior for which the person is charged under this section, the person had three or more times within ten years of the instant offense:*

Although Act 71 is a subsequent amendment to the two laws being compared in this case, its accompanying legislative history confirms the conclusion that its two predecessors, HRS § 291–4.4 and HRS § 291E–61, are not substantially similar. *See State v. Sullivan*, 97 Hawai'i 259, 266, 36 P.3d 803, 810 (2001) (noting that this court has "often held [that] subsequent legislative history or amendments may be examined in order to confirm [its] interpretation of statutory provisions" (internal quotation marks omitted)). The legislature indicated it passed Act 71 to "*create[ ] a separate offense* of 'habitually operating a vehicle under the influence of an intoxicant'" and to "allow[ ] juvenile DUI adjudications to be considered prior convictions." Conf. Com. Rep. No. 18, in 2003 Hse. Journal, at 1707 (emphasis added).

The conference committee found "that a habitually-impaired driver poses a risk while operating a motor vehicle" and that "*[c]harging* a habitually-impaired driver with a felony offense will serve to deter persons from driving while intoxicated." Conf. Com. Rep. No. 18, in 2003 Hse. Journal at 1707 (emphasis added). The legislature, therefore, apparently believed that habitually operating a vehicle under the influence was not a "separate offense" under HRS § 291E–61 (Supp.2002) as Habitual DUI had been under HRS § 291–4.4 and, thus, contrary to the majority's assertions, HRS § 291E–61 did not require the prosecution to "charge" defendants with the class C "felony offense."

Hence, the majority's assertion that Act 71 merely "recodified" HRS § 291E–61(b)(4) as a "separate offense" and that the "significance" of this "was to separate the felony offense from the apparent assortment of petty misdemeanor offenses codified in HRS §§ 291E–61(b)(1) through 291E–61(b)(3)," majority opinion at — – — n.1, 107 P.3d at 411 n.1, is belied by the conference committee reports. As noted, the reports expressly state that the legislature was "creat[ing]" the "separate offense" of Habitual OUI in order to "charg[e] ... habitually-impaired driver[s] with a felony offense." Conf. Com. Rep. No. 18, in 2003 Hse. Journal at 1707. Therefore, the legislature's intention was not simply to recodify §§ 291E–61(b)(1) through (b)(3).

The legislative history of Act 71 thus confirms that the legislature intended the question of three prior convictions to be treated as a sentencing factor, as opposed to an element of an offense, under HRS § 291E–

(1) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for a violation of this section or section 291-4, 291-4.4, or 291-7 as those sections were in effect on December 31, 2001, or section 291E-61 or 707-702.5;

(2) A judgment on a verdict or a finding of guilty, or a plea of guilty or nolo contendere, for an offense that is comparable to this section or section 291-4, 291-4.4, or 291-7 as those sections were in effect on December 31, 2001, or section 291E-61 or 707-702.5; or

(3) An adjudication of a minor for a law or probation violation that, if committed by an adult, would constitute a violation of this section or section 291-4, 291-4.4, or 291-7 as those sections were in effect on December 31, 2001, or section 291E-61 or 707-702.5;

that, at the time of the instant offense, had not been expunged by pardon, reversed, or set aside. All convictions that have been expunged by pardon, reversed, or set aside prior to the instant offense shall not be deemed prior convictions for the purposes of proving the person's status as a habitual operator of a vehicle while under the influence of an intoxicant.

*A person has the status of a "habitual operator of a vehicle while under the influence of an intoxicant" if the person has been convicted three or more times within ten years of the instant offense, for offenses of operating a vehicle under the influence of an intoxicant.*

(c) *Habitually operating a vehicle while under the influence of an intoxicant is a class C felony.*

(d) For a conviction under this section, the sentence shall be either:

(1) An indeterminate term of imprisonment of five years; or

(2) A term of probation of five years, with conditions to include:

(A) Mandatory revocation of license and privilege to operate a vehicle for a period not less than one year but not more than five years;

(B) Not less than ten days imprisonment, of which at least forty-eight hours shall be served consecutively;

(C) Referral to a certified substance abuse counselor as provided in section 291E-61(d); and

(D) A surcharge of $25 to be deposited into the neurotrauma special fund....

(Emphases added.)

61. Accordingly, the legislative history of Act 71 verifies that HRS § 291E–61 did not substantially re-enact the offense of Habitual DUI under HRS § 291–4.4.

## IX.

### A.

Rather than relying on the prosecution's arguments, the majority advances a proposition not argued by any party or considered by the court. The majority posits that a charge of a class C felony under HRS § 291E–61 rests on "aggravating circumstances [that] must be alleged in the charging instrument in order to give the defendant notice ... [and] must be determined by the trier of fact[,]" majority opinion at ——, 107 P.3d at 416–417 (quoting *State v. Tafoya*, 91 Hawai'i 261, 270, 982 P.2d 890, 899 (1999) (quoting *State v. Schroeder*, 76 Hawai'i 517, 528, 880 P.2d 192, 203 (1994)))[11] (internal quotation marks and brackets omitted), and hence, that "[i]nasmuch as the prosecution is *still required to prove* ... the three prior convictions ... [,] the offense of habitual DUI, HRS § 291–4.4, is substantially re-enacted in HRS § 291E–61(b)(4)[,]" *id.* at ——, 107 P.3d at 417 (emphasis added). But, *Schroeder* and *Tafoya* held that the requirement that the defendant be notified of, and the prosecution prove "aggravating circumstances" is mandated by our constitution's due process clause. Thus the due process rule advanced by the majority arises only if a due process challenge is raised against an indictment. Plainly, that rule has nothing to do with an interpretation of legislative intent as expressed in connection with an apparent repeal of a statute.

Hence, the question here is not whether the indictment fails to inform Defendant of the charge and so violates due process. There is no violation of due process. Under the indictment Defendant is plainly informed of the specific statute—HRS § 291–4.4—and the basis on which he is charged, *see supra*, a fact both the parties and the court recognized. Here, the question that must first be answered is *whether the statute under which the charges were brought legally exists at all, because that statute was repealed.*

The answer, as oft-repeated herein, rests on whether, in comparing the texts of HRS § 291–4.4 and HRS § 291E–61, the repealed statute is virtually identical to the new one so that this court is warranted in concluding that the new statute is but a continuation of the old. *See In re Dapper*, 77 Cal.Rptr. 897, 454 P.2d at 908, 910. It is obvious that that is not the case here. Consequently, to dispose of this appeal, the majority must reach beyond the issues argued below and on appeal and that were decided by the court.

The majority does so by deciding an issue not before this court. Consequently, the majority purports to decide whether an indictment brought pursuant to the *new* statute, HRS § 291E–61, under which Defendant has not been charged, can be saved in the face of a due process challenge that Defendant has not brought. The majority then contends that because constitutional due process requirements must be imposed on indictments under the *new* statute, the imposition of such requirements would make the new statute substantially similar to the repealed one. But such requirements must be judicially imprinted on HRS § 291E–61 inasmuch as that statute makes the three prior conviction condition a sentencing factor rather than an element of the offense.

Thus, the majority's rationale contains its own infirmity. If anything, it establishes that the new statute, HRS § 291E–61, must be judicially impressed with due process requirements because it lacks the condition that the three prior convictions be proved as an element of the offense—an infirmity not contained in the repealed statute, HRS § 291–4.4, inasmuch as such an element is expressly stated therein: substantiating, indeed, that the new statute is *not* a substantial *re-enactment* of the repealed one.

### B.

Assuming *arguendo* the relevance of *Tafoya*, even the majority's own application of

---

**11.** Schroeder maintained that the language of his indictment failed to notify him that the kidnapping charge included an allegation that he used a handgun, thus subjecting him to a mandatory minimum prison sentence under HRS § 706–660.1. Obviously in *Schroeder* the statute under which the defendant was charged had not been previously repealed.

that case appears incorrect. The majority states that "[i]f the prefatory language of HRS § 291E–61(b)(1) through 291E–61(b)(4) were mere 'sentencing factors' that the prosecution was not obliged to allege and prove to the trier of fact, ... then defendants charged with HRS § 291E–61 offenses would have no idea what the particular offense was that they were charged with committing or whether they were entitled to a jury trial." Majority Opinion at —— n.8, 107 P.3d at 416. The majority posits what it perceives as a constitutional defect in the statute itself, HRS § 291E–61. But that issue is not before us. No due process violation occurred here because Defendant was charged with Habitual DUI under HRS § 291–4.4. Under that statute, three prior convictions was an element of the offense of Habitual DUI, which required the prosecution to allege and prove the prior convictions. Accordingly, Defendant had notice that prior convictions would be "relied on to prove the defendant's guilt and support the sentence to be imposed." *Tafoya*, 91 Hawai'i at 270, 982 P.2d at 899.

The majority concludes that the "prefatory language of HRS [§ ] § 291E–61(b)(1) through 291E–61(b)(4) describes attendant circumstances ... that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E–61 as a whole describes." Majority Opinion at ——, 107 P.3d at 416 (citation omitted). This is a misapplication of the intrinsic-extrinsic analysis. Under HRS § 291–4.4, the finding of three prior convictions was an element of the offense of Habitual DUI. This is not the case under HRS § 291E–61(a), which described the offense of OUI. The finding of three prior convictions was expressly incorporated under the sentencing provisions in HRS § 291E–61(b). Thus, no habitual offense existed between January 1, 2002 and December 31, 2003. Inasmuch as no habitual offense existed, the finding of three prior convictions was not, as the majority posits, "intrinsic to and 'enmeshed' in" HRS § 291E–61. *Id.* Rather, the finding of three prior convictions was "extrinsic," or "separable from the offense [of *plain OUI*] itself." *Tafoya*, 91 Hawai'i at 271, 982 P.2d at 900.

### C.

In order to reach its result, the majority embarks upon a mode of decision unique in its lack of reference to the case presented. The proposition advanced by the majority was not argued or briefed by the parties, or decided by the court. No factual basis exists in the record for application of the principles in *Schroeder* and *Tafoya.* The majority's holding, then, constitutes an advisory opinion to one side on how future cases under the *new* statute may be saved from motions for dismissal. The majority's rationale does not rest on a comparison between the language of the repealed and new statutes and, accordingly, distorts the "substantial re-enactment" rule. In misapplying *In re Dapper* and *Sekt,* the majority's decision casts our case law on repeals into disarray. I respectfully cannot agree with such an approach.

### X.

It should be observed that a third basis for charging the offense described in HRS § 291–4.4(a)(3) was that "[a] person operates or assumes actual physical control of the operation of any vehicle while under the influence of *any drug* which impairs such person's ability to operate the vehicle in a careful and prudent manner." (Emphasis added.) It was indicated that the term "drug" as used in that section "shall mean any controlled substance as defined and enumerated on schedules I through IV of chapter 329." HRS § 291–4.4(a)(3).

In contrast, HRS § 291E–61(a)(2) makes the same reference to "the influence of *any drug* that impairs the person's ability to operate the vehicle in a careful and prudent manner" but does not define the term "drug". (Emphasis added.) Consequently, HRS § 291E–61(a)(2) broadens the statute to encompass "any drug" that causes the prescribed impairment. The breadth of the new statute thus extends beyond that previously specified in the denominated schedules. Rather than "clarifying" the prior statute, the lack of a definition raises new questions of the scope of the term "drug," has nothing to do with rearrangement of clauses, or the deletion of superseded provisions,—grounds

that would warrant application of the substantial reenactment exception. *In re Dapper,* 71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d at 908. In eliminating the definition for "any drug" that was contained in the repealed statute, the new statute refashions the nature of the offense. Therefore, again, HRS § 291E–61(a)(2) does not substantially reenact HRS § 291–4.4(a)(3).

## XI.

Other changes reflected in HRS § 291E–61 would critically affect the evidence to be adduced at trial. HRS § 291–4.4(b) defined what offenses were to be considered as "driving under the influence" offenses for the purposes of determining prior convictions. HRS § 291–4.4(b) stated that "these offenses include violations under HRS §§ 291–4 [ (driving under the influence of intoxicating liquor) ], 291–7 [ (driving under the influence of drugs) ], or 707–702.5 [ (negligent homicide in the first degree) ], or violation of laws in another jurisdiction that requires proof of each element of the offenses punishable under either this section or section 291–4, 291–7, or 707–702.5 if committed in Hawai'i." Accordingly, HRS § 291–4.4(b) defined a prior conviction in this state as "a violation of this section [12] or section 291–4, 291–7, or 707–702.5."

HRS § 291E–61 differs in two ways. First, with regard to in-state convictions, unlike HRS § 291–4.4(b), HRS §§ 291E–61(c) [13] and 291E–4(a) add a violation of HRS § 200–81 to the list of Hawai'i offenses that lead to a "habitual" OUI offender sentencing. Hence, whereas, HRS § 291E–61(c)(1) includes a conviction under HRS § 200–81 in the subject offenses, HRS § 291–4.4 did not.

Accordingly, HRS § 291E–61(c) does not substantially re-enact HRS § 291–4.4(b).

Second, there are critical differences between HRS §§ 291–4.4(b) and 291E–61(c)(2) with regard to foreign convictions treated as "prior convictions" to be counted toward the class C felony violation. HRS § 291–4.4 defined an extra jurisdiction conviction as a "violation of laws in another jurisdiction that *requires proof of each element of the offenses* punishable under either this section or section 291–4, 291–7, or 707–702.5 if committed in Hawai'i." (Emphasis added.) However, HRS § 291E–61(c)(2) defines such convictions as a "[c]onviction in any other state or federal jurisdiction for an offense that is *comparable* to operating or being in physical control of a vehicle while having either an unlawful alcohol concentration or an unlawful drug content in the blood or urine or while under the influence of an intoxicant." (Emphasis added.)

Because HRS § 291–4.4 mandated that convictions in the foreign jurisdiction "require[ ] proof of each element of the offenses *punishable under either this section or section* 291–4, 291–7, or 707–702.5" and HRS § 291E–61 only requires that the foreign conviction be "*comparable* to operating or being in physical control of a vehicle while having either an unlawful alcohol concentration or an unlawful drug content in the blood or urine or while under the influence of an intoxicant," (emphasis added), HRS § 291E–61 is significantly broader in scope. HRS § 291E–61(c)(2) extends the reach of the statute by tallying as relevant those convictions which are only "comparable" and hence, need not contain elements of the intoxicant offense as defined in this jurisdiction. Consequently, HRS § 291–4.4(b) is not substan-

---

**12.** "This section" refers to HRS § 291–4.4 pertaining to habitually driving under the influence of intoxicating liquor.

**13.** With regard to convictions within the state, HRS § 291E–61(c)(1) provides that "[c]onviction under this section or section 291E–4(a) ... shall be considered a prior conviction for the purposes of imposing sentence"[.] In turn, HRS § 291E–4(a) (Supp.2000) indicates as follows:

　(a) Any:
　(1) *Conviction for an offense under section 200–81 [ (operating a vessel under influence of intoxicating liquor) ], 291–4, 291–*

*4.4, or 291–7, as those sections were in effect on December 31, 2001;* or
　(2) *Conviction in any other state or federal jurisdiction for an offense that is comparable to operating or being in physical control of a vehicle while having either an unlawful alcohol concentration or an unlawful drug content in the blood or urine or while under the influence of an intoxicant;*
*shall be counted as a prior offense for purposes of section 291E–41 or 291E–61.*
(Emphases added.)

tially re-enacted in HRS § 291E–61(c)(2). As with the other changes, the substantial differences in HRS § 291E–61 plainly "affect the continuous operation of the [prior] law," of HRS § 291–4.4(b). *In re Dapper,* 71 Cal.2d 184, 77 Cal.Rptr. 897, 454 P.2d at 908. This is contrary to the presumed legislative intent "not" to do so, which presumed intent is the underlying justification for the substantial reenactment rule.

## XII.

In the face of the major disparities enumerated above, we are precluded from "saving" the repealed statute by the guise of a substantial reenactment exception. *Cf. State v. Meyer,* 61 Haw. 74, 77, 595 P.2d 288, 291 (1979) ("Even where the Court is convinced in its own mind that the Legislature really meant and intended something not expressed by the phraseology of the Act, it has no authority to depart from the plain meaning of the language used.") (Quoting *Queen v. San Tana,* 9 Haw. 106, 108 (1893)); *San Tana,* 9 Haw. at 108 (adopting the words of Lord Campbell in 1853, as follows: "I cannot doubt ... what the intention of the Legislature was, but that intention has not been carried into effect by the language used[,]" and thus "[i]t is far better that we should abide by the words of the statute than seek to reform it according to the supposed intention[ ]" for "[e]very departure from the clear language of the statute is in effect an assumption of legislative powers by the Court[ ]"). Based on the foregoing, I would affirm the court's June 21, 2002 order dismissing the indictment without prejudice.[14]

14. I believe the other grounds raised by the prosecution on appeal were not meritorious.